81 A.3d 851

Kathleen TOOEY, Executrix of the Estate of John F. Tooey, Deceased, and Kathleen Tooey in her own right, Appellant

v.

AK STEEL CORPORATION (Individually and as Successor in interest to Armco Steel Corporation); Crown Cork & Seal Company, Inc. (Individually, as Successor to Mundet Cork Company, and as Successor to Van Dorn Ironworks Company); E.E. Zimmerman Company; Foseco, Inc.; George V. Hamilton, Inc.; Hedman Mines, Ltd.; Insul Company, Inc.; I.U. North America, Inc.; McCann Shields Paint Company; Oglebay Norton Company (Individually and on behalf of its Ferro Engineering Division); Tasco Insulations, Inc. (individually and as Successor–in–Interest to Asbestos Service Company); the Gage Company (Formerly Pittsburgh Gage and Supply Co.); Theim Corporation, and its Division Universal Refractories Corporation; and United States Steel Corporation, Appellees.

Spurgeon E. Landis and Mary A. Landis, his wife, Appellants

v.

A.W. Chesterton Company; Union Carbide Corporation; CBS Corporation, formerly known as Viacom, Inc., as Successor–by–Merger to CBS Corporation, Successor–in–Interest to Westinghouse Electric Corporation; Ingersoll–Rand Company; Grinnell Corporation; Goulds Pumps, Inc.; Greene Tweed & Company; Hedman Mines, Ltd.; Garlock Sealing Technologies, LLC; Crane Company; Certainteed Corporation; Safety First Industries, Inc., in its own right and as Successor–in–Interest to Safety First Supply, Inc.; Alloy Rods Corporation, individually and as Successor–in–Interest to Alloy Rods Company; Chemetron Corporation, Individually and as Successor–in–In-

terest to Alloy Rods Corporation and Alloy Rod Company; The ESAB Group, Inc., individually and as Successor–in–Interest to Alloy Rods Corporation, Alloy Rods Company and Chemetron Corporation; Saint Gobain Abrasives, Inc. (f/k/a Norton Company–Safety Products Division–USA North Company); and Hajoca Corporation, Appellees.

Spurgeon E. Landis and Mary A. Landis, his wife, Appellants

v.

A.W. Chesterton Company; Union Carbide Corporation; CBS Corporation, Formerly Known as Viacom, Inc., as Successor–by–Merger to CBS Corporation, Successor–in–Interest to Westinghouse Electric Corp.; Ingersoll–Rand Company, Grinnell Corporation; Goulds Pumps, Inc.; Greene Tweed & Company; Hedman Mines Ltd.; Garlock Sealing Technologies, LLC; Crane Company; Certainteed Corporation; Safety First Industries Inc., in its own right and as Successor–in–Interest to Safety First Supply, Inc., Alloy Rods Corporation, individually and as Successor–in–Interest to Alloy Rods Company; Chemetron Corporation, individually and as Successor–in–Interest to Alloy Rods Corporation and Alloy Rods Company; The ESAB Group Inc., individually and as Successor–in–Interest to Alloy Rods Corporation, Alloy Rods Company and Chemetron Corporation; Saint Gobain Abrasives, Inc. (f/k/a Norton Company–Safety Products Division–USA North Company); and Hajoca Corporation, Appellees.

Supreme Court of Pennsylvania.

Argued April 10, 2012.

Decided Nov. 22, 2013.

64

Robert F. Daley, Esq., Robert Peirce & Associates, P.C., Pittsburgh, Roderick Scott Marshall, Esq., Brent M. Rosenthal, Esq., for Kathleen Tooey and Estate of John F. Tooey in No. 21 WAP 2011.

Daniel King Bricmont, Esq., Caroselli, Beachler, McTiernan & Conboy, L.L.C., Pittsburgh, for Pennsylvania Association for Justice, amicus curiae in Nos. 21 WAP 2011 and 23 WAP 2011.

Norman A. Coliane, Esq., United States Steel Corporation, for United States Steel Corporation in No. 21 WAP 2011.

Michael D. Heintzman, Esq., Rawle & Henderson, L.L.P., Pittsburgh, for Ferro Engineering and Oglebay Norton Company in No. 21 WAP 2011.

Diana Leigh Johnson, Esq., Michael J. Schessler, Esq., Bowles, Rice, McDavid, Graff & Love, L.L.P., for AK Steel Corporation in No. 21 WAP 2011.

Michael Magee, Esq., Pietragallo, Gordon, Alfano, Bosick & Raspanti, L.L.P., for Theim Corporation and Universal Refractories Corporation in No. 21 WAP 2011.

Joni M. Mangino, Esq., Zimmer Kunz, P.L.L.C., Pittsburgh, for Insul Company, Inc. in No. 21 WAP 2011.

John J. Repcheck, Esq., Marks, O'Niell, O'Brien & Courtney, P.C., Pittsburgh, for E.E. Zimmerman Company in No. 21 WAP 2011.

Terry Allen Schrock, Esq., Maron Pierce, L.L.C., Pittsburgh, for Foseco, Inc. in No. 21 WAP 2011.

Concetta Angela Silvaggio, Esq., Willman & Silvaggio, LLP, for George V. Hamilton, Inc. in No. 21 WAP 2011.

Jeanne Welch Sopher, Esq., Rawle & Henderson, L.L.P., Pittsburgh, for Ferro Engineering in No. 21 WAP 2011.

Robert F. Daley, Esq., Robert Peirce & Associates, P.C., Pittsburgh, Roderick Scott Marshall, Esq., Brent M. Rosenthal, Esq., for Spurgeon E. Landis and wife Mary A. Landis in Nos. 22 WAP 2011 and 23 WAP 2011.

Andrew Frank Adomitis, Esq., Jeannine Lynn Bertig, Esq., Leo Gerard Daly, Esq., Grogan Graffam, P.C., Pittsburgh, for Goulds Pumps, Inc. in Nos. 22 WAP 2011 and 23 WAP 2011.

Jeannine Lynn Bertig, Esq., Grogan Graffam, P.C., for Paragon Way, Inc. in No. 23 WAP 2011.

Kenneth M. Argentieri, Esq., Robert L. Byer, Esq., Gerald John Schirato Jr., Esq., Duane Morris, L.L.P., Pittsburgh, for The ESAB Group, Inc. and Chemetron Corporation in Nos. 22 WAP 2011 and 23 WAP 2011.

Alba E. Arriaga, Esq., Riley, Hewitt, Witte & Romano, P.C., Pittsburgh, for A.W. Chesterton Company in Nos. 22 WAP 2011 and 23 WAP 2011.

Eric R.I. Cottle, Esq., Nicholas P. Vari, Esq., K & L Gates, L.L.P., Pittsburgh, for Crane Company in Nos. 22 WAP 2011 and 23 WAP 2011.

William J. Donovan, Esq., Sheila Weis Scanlon, Esq., Burns, White & Hickton, L.L.C., Pittsburgh, for Ingersoll–Rand Corp. in Nos. 22 WAP 2011 and 23 WAP 2011.

Gregory L. Fitzpatrick, Esq., Margolis Edelstein, for Garlock Sealing Technologies LLC in Nos. 22 WAP 2011 and 23 WAP 2011.

Andrew Edson Greenberg, Esq., for CBS Corporation in Nos. 22 WAP 2011 and 23 WAP 2011.

Richard Linwood Walker II, Esq., Robert N. Spinelli, Esq., Kelley, Jasons, McGowan Spinelli & Hanna, L.L.P., Philadelphia, for Union Carbide Corporation in Nos. 22 WAP 2011 and 23 WAP 2011.

Jennifer E. Watson, Esq., Edward Joseph Wilbraham, Esq., Wilbraham Lawler & Buba, Pittsburgh, for Certainteed Corporation and Saint Gobain Abrasives, Inc. in Nos. 22 WAP 2011 and 23 WAP 2011.

Anne Loehr Wilcox Lewis, Esq., Robert N. Spinelli, Esq., Kelley, Jasons, McGowan Spinelli & Hanna, L.L.P., Philadelphia, for Hedman Mines, LTD in Nos. 22 WAP 2011 and 23 WAP 2011.

Dennis F. Wolford, Esq., Reed, Luce, Tosh, Wolford & Douglass, Beaver, for Greene, Tweed & Co. Inc. in Nos. 22 WAP 2011 and 23 WAP 2011.

Louis C. Long, Esq., Pietragallo, Gordon, Alfano, Bosick & Raspanti, L.L.P., Pittsburgh, for Pennsylvania Defense Institute, amicus curiae in Nos. 22 WAP 2011 and 23 WAP 2011.

Carl A. Solano, Esq., Schnader Harrison Segal & Lewis, L.L.P., Rohm & Haas Company, Philadelphia, amicus curiae in Nos. 22 WAP 2011 and 23 WAP 2011.

Eric Lorin Horne, Esq., Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, for CBS Corporation and Alloy Rods Corporation in No. 23 WAP 2011.

John Christie McMeekin II, Esq., Keithley D. Mulvihill, Esq., Peter J. Neeson, Esq., Rawle & Henderson, L.L.P., Philadelphia, for Hajoca Corporation in No. 23 WAP 2011.

Patrick R. Riley, Esq., Riley, Hewitt, Witte & Romano, P.C., Pittsburgh, for A.W. Chesterton Co. in No. 23 WAP 2011.

Livia Langton Santschi, Esq., Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, Daniel Joseph Sinclair, Esq.,

Schnader Harrison Segal & Lewis, LLP, for CBS Corporation in No. 23 WAP 2011.

Joseph R. Schaper, Esq., Maron Pierce, L.L.C., Pittsburgh, for Safety First Industries Inc. in No. 23 WAP 2011.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In these consolidated appeals, we consider whether the manifestation of an occupational disease outside of the 300–week period prescribed by Section 301(c)(2) of the Workers' Compensation Act (the "WCA" or the "Act"),[1] 77 P.S. § 411(2), removes the claim from the purview of the Act, such that the exclusivity provision of Section 303(a) of the Act, 77 P.S. § 481, does not apply. For the reasons that follow, we conclude that claims for occupational disease which manifests outside of the 300–week period prescribed by the Act do not fall within the purview of the Act, and, therefore, that the exclusivity provision of Section 303(a) does not apply to preclude an employee from filing a common law claim against an employer. Accordingly, we reverse the decision of the Superior Court.

John Tooey worked for Ferro Engineering ("Ferro"), a division of Oglebay–Norton Co. ("Oglebay"), as an industrial salesman of asbestos products from 1964 until 1982, during which time he was exposed to asbestos dust. In December 2007, Tooey developed mesothelioma and died less than one year later. Spurgeon Landis worked for Alloy Rods, Inc. ("Alloy"), predecessor in interest to Chemetron Corp. ("Che metro n"), and ESAB Group, Inc. ("ESAB"), from 1946 until 1992. He, too, was exposed to asbestos throughout his employment, and, in July 2007, was diagnosed with mesothelioma.

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1; 2501–2626).

In 2008, Tooey, Landis, and their spouses (hereinafter "Appellants") filed separate tort actions against multiple defendants, including their respective employers (collectively, "Employers"). Employers filed motions for summary judgment, alleging Appellants' causes of action were barred by the exclusivity provision of Section 303(a) of the Act.[2] Appellants responded that the Act, the federal and state constitutions, and precedent from this Court, permit a tort action against an employer where, as here, a disease falls outside the jurisdiction, scope, and coverage of the Act. The trial court agreed with Appellants, and denied Employers' motions for summary judgment.

Employers filed an interlocutory appeal with the Superior Court, which reversed in an unpublished memorandum decision. In so doing, the court concluded it was bound by its recent decisions in *Ranalli v. Rohm & Haas Co.*, 983 A.2d 732 (Pa.Super.2009), and *Sedlacek v. A.O. Smith Corp.*, 990 A.2d 801 (Pa.Super.2010). In *Ranalli*, the Superior Court determined that the fact that the plaintiff's injuries, which resulted from his exposure to vinyl chloride and manifested more than 300 weeks after his last employment, were not compensable under the Act did not render the exclusivity provision of Section 303(a) inapplicable. The Superior Court reasoned that application of Section 303(a) "does not deny access to the courts, rather it limits recovery as contemplated by the legislative scheme." *Ranalli*, 983 A.2d at 735. Similarly, in *Sedlacek*, the Superior Court observed that both the WCA and the Occupational Disease Act ("ODA"), 77 P.S. §§ 1201 *et seq.*, contain provisions which purport to limit compensation for

---

**2.** Section 303(a) of the Act provides:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a) (footnotes omitted). Pursuant to Section 108 of the Act, the term "occupational disease" includes, *inter alia*, "[a]sbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure." 77 P.S. § 27.1(*l*).

disability or death resulting from occupational disease to injuries that occur within a defined period from the date of last employment, and the court determined that such provisions do not violate the federal Due Process or Equal Protection Clause, or the Remedies Clause of the Pennsylvania Constitution.

Although the Superior Court in the instant case acknowledged Appellants' position that *Ranalli* and *Sedlacek* "improperly expanded the application of the exclusivity provision," the court concluded it lacked authority to overrule its prior decisions. *Tooey v. AK Steel*, 1540–42 WDA 2009, unpublished memorandum at 7, 11 A.3d 1046 (Pa.Super. filed Aug. 31, 2010). Appellants filed a petition for allowance of appeal with this Court, and we granted review to determine (1) whether, under the plain language of Section 301(c)(2), the definition of "injury" excludes an occupational disease that first manifests more than 300 weeks after the last occupational exposure to the hazards of such disease, such that the exclusivity provision of Section 303(a) does not apply; (2) whether Section 301(c)(2), in conjunction with the exclusivity provision of Section 303(a), results in an unconstitutional denial of reasonable compensation under Pa. Const. Art. III, § 18; and (3) whether the substitution of an exclusive statutory remedy for a common law remedy for an occupational disease which is "invariably noncompensable" under the statutory remedy violates the Open Court and Remedies Clause of Pa. Const. Art. I, § 2 and the Due Process and Equal Protection Clauses of the federal and state constitutions. *Tooey v. AK Steel Corp.*, 610 Pa. 405, 20 A.3d 1184 (2011) (order).

As it is this Court's policy to resolve claims on nonconstitutional grounds when it is possible to do so, *see, e.g.*, *Commonwealth v. Long*, 592 Pa. 42, 50, 922 A.2d 892, 897 (2007), we first consider Appellants' argument that, because their injuries are excluded from the definition of injury set forth in Section 301(c)(2), their claims do not fall within the parameters of the Act, and, therefore, the exclusivity provision of Section 303(a) of the Act does not preclude them from pursuing common law claims against Employers. As this

issue raises a question of law, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Commonwealth,* 606 Pa. 334, 340, 998 A.2d 575, 579 (2010).

The WCA was designed "to compensate claimants for earnings loss occasioned by work-related injuries." *City of Erie v. W.C.A.B. (Annunziata),* 575 Pa. 594, 601, 838 A.2d 598, 602 (2003). The Act seeks "to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer." *Id.* Indeed, Section 303(a) of the Act specifies that "liability of an employer under the act shall be exclusive and in place of any and all other liability to such employes." 77 P.S. § 481(a). We have further explained that "[t]he goal of the workers' compensation legislative scheme is to relieve the employee 'from the economic consequences of his injury and make [those consequences] a part of the cost of operation of the business, to be paid ultimately by the consuming public.'" *Annunziata,* 575 Pa. at 601, 838 A.2d at 602 (quoting *Rudy v. McCloskey Corp.,* 348 Pa. 401, 35 A.2d 250, 253 (1944)).

Relevant to the case *sub judice,* Section 301(c)(2) of the Act provides, in pertinent part:

The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include ... occupational disease as defined in section 108 of this act [i.e., 77 P.S. § 27.1]: *Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment* in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.

77 P.S. § 411(2) (emphasis added).

Appellants argue that, under the plain language of Section 301(c)(2), an occupational disease which first manifests more

than 300 weeks after the last occupational exposure to the hazards of the disease does not fall within the definition of injury set forth in Section 301(c)(2); that the Act, therefore, does not apply to employees seeking compensation for such diseases; and, accordingly, that the exclusivity provision of Section 303(a) does not preclude an employee from seeking recovery for such disease through a common law action against an employer. Appellants contend their interpretation of the statutory language is supported by general rules of grammar, and, to the extent the statute may be deemed ambiguous, that their interpretation is consistent with the humanitarian purposes of the Act, as well as precedent from this Court.

Employers, conversely, assert that Section 303(a), by its express language, "unequivocally precludes current or former employees from making civil claims for damages against their employers for work-related injuries," including occupational disease claims. *See, e.g.,* ESAB/Chemetron Brief at 9–10. Employers, like Appellants, argue their interpretation is supported by recognized principles of grammar, the underlying purpose of the Act, and this Court's prior decisions interpreting the Act. Additionally, Employers emphasize the distinction between compensability and coverage under the Act, and they contend that Section 301(c)(2) is a valid statute of repose that serves as a temporal limitation on recovery, rather than a jurisdictional limitation of the Act.

■■ It is well settled that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Further, "[i]n giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Giant Eagle, Inc. v. W.C.A.B. (Givner),* 614 Pa. 606, 39 A.3d 287, 290 (Pa.2012) (citation omitted). When construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A.

§ 1903. Furthermore, when reviewing issues concerning the Act, we are mindful that the Act is remedial in nature and its purpose is to benefit the workers of this Commonwealth. Thus, the Act is to be liberally construed to effectuate its humanitarian objectives, and borderline interpretations are to be construed in the injured party's favor. *Sporio v. W.C.A.B. (Songer Const.),* 553 Pa. 44, 49, 717 A.2d 525, 528 (1998).

Turning to the pertinent language of Section 301(c)(2)—"whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease"—Appellants contend that the word "it" in the phrase "it shall apply," refers to "this act" and not to "the basis for compensation." Thus, they read Section 301(c)(2) as follows: "whenever occupational disease is the basis for compensation, for disability or death under this act, this act shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment."

In support of their argument, they rely on "an elementary rule of grammar, [that] a pronoun may substitute for or refer to an immediately preceding noun." Appellants' Brief at 16 (citing The Chicago Manual of Style, § 5.34 (15th ed. 2003)). They further assert that, while a legislative act is frequently said to "apply," the phrase "basis for compensation" is not ordinarily used in the same manner.

Employers, on the other hand, argue that the term "it" in the phrase "it shall apply only to disability or death," refers to the term "compensation," an interpretation they contend is supported by the rules of grammar concerning restrictive and nonrestrictive clauses. Specifically, Employers assert:

A restrictive clause is a clause that is essential to the meaning of a sentence, including the identification of nouns or pronouns in the sentence. It is not set off by commas.

By contrast, nonrestrictive clauses, which contain nonessential and mere explanatory information, are set apart from the rest of the sentence by a pair of commas. Nonrestrictive clauses "do not restrict the meaning of the word or words they relate to . . .; they could be removed from the sentence without changing the [sentence's] basic meaning." The pair of commas around a nonrestrictive clause act exactly like a pair of parentheses.

Brief for ESAB/Chemetron, at 20 (citations omitted). Applying these grammatical rules to Section 301(c)(2), Employers argue that the phrase "for disability or death under this act," is nonrestrictive, such that the word "it" clearly refers to the word "compensation," and not "act." *Id.* at 21. Thus, Employers read Section 301(c)(2) as follows: "whenever occupational disease is the basis for compensation, for disability or death under this act, compensation shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment." [3]

■ Upon review, we find Appellants' interpretation of the language of Section 301(c)(2) to be the most reasonable one. Although both Appellants and Employers make grammatical arguments based on punctuation placement, the common and approved usage of the terms in Section 301(c)(2) clearly support Appellants' interpretation of the statute. While an act generally is described as applying or not applying in certain situations, the term "compensation" is not invoked in the same manner. Indeed, our research reveals no published decision in which any Pennsylvania court has utilized the verb "apply" to describe the term "compensation." Similarly, there are no Pennsylvania statutes which invoke the terms "apply" and "compensation" in this manner. Thus, we conclude that the term "it" applies not to "compensation," but to the term "act," as contained in (1) the phrase "for disability or death under

---

**3.** Employers, in arguing that the word "it" refers to the word "compensation," and not "act," ignore the possibility that the word "it" might refer to the word "act," as contained in the preamble, which states: "The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include . . . occupational disease as defined in section 108 of this act."

this act" immediately preceding "it"; and/or (2) the phrase "as used in this act" in the preamble to Section 301(c)(2). Accordingly, we construe Section 301(c)(2) as follows: "whenever occupational disease is the basis for compensation, for disability or death under this act, [the act] shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment."

■ Assuming, for purposes of argument, that Employers' interpretation of Section 301(c)(2) also is reasonable, such that there exists an ambiguity, see *Giant Eagle,* 39 A.3d at 294 (where there are at least two reasonable interpretations of statutory text, there exists an ambiguity), we turn, as the parties do in the alternative, to further principles of statutory construction. *See* 1 Pa.C.S.A. § 1921(c). In determining the intent of the legislature with regard to Section 301(c)(2), we are guided primarily by consideration of the occasion and necessity for the statute; the object to be attained; and the consequences of the proposed interpretations.

■ This Court has recognized that the Act "substitutes a quick and inexpensive scheme to provide compensation for work-related injuries in place of the common law process where the employee must sue the appropriate parties for damages. Employers pay benefits at a set rate and they are immune from common-law liability." *Sporio,* 553 Pa. at 53, 717 A.2d at 530 (citation omitted); *see also Markle v. W.C.A.B. (Caterpillar Tractor Co.),* 541 Pa. 148, 153, 661 A.2d 1355, 1357 (1995) ("Worker's Compensation can best be understood as a replacement of common law tort actions between employees and employers as a means for obtaining compensation for injuries.").

■ With regard to the exclusivity provision of Section 303(a), this Court, in *Alston v. St. Paul Ins. Cas.,* explained that Section 303(a):

reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the

possibility of a larger damage verdict in a common law action. The employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages.

531 Pa. 261, 267, 612 A.2d 421, 424 (1992).[4] We have repeatedly stressed, however, that the Act is "remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Giant Eagle*, 39 A.3d at 290; *see also Lancaster Gen. Hosp. v. WCAB (Weber–Brown)*, 616 Pa. 333, 47 A.3d 831, 839 (2012).

In the case *sub judice*, Appellants contend that, as a result of the 300–week time provision contained in Section 301(c)(2), in cases involving latent, asbestos-related mesothelioma, "the quid pro quo contemplated by the Act cannot be effectuated. The employee does not benefit from 'expeditious payment of compensation,' and in fact has no reasonable opportunity to obtain compensation at all." Appellants Brief at 19. Thus, according to Appellants, "[i]t would violate the spirit of the Act to ... grant the employer full immunity based on the illusion that the employer bears 'no-fault' liability for the worker's non-compensable occupational injury." *Id.*

In support of their position, Appellants rely on this Court's prior decisions in *Lord Corp. v. Pollard*, 548 Pa. 124, 695 A.2d 767 (1997), *Boniecke v. McGraw–Edison Co.*, 485 Pa. 163, 401 A.2d 345 (1979), and *Greer v. U.S. Steel Corp.*, 475 Pa. 448, 380 A.2d 1221 (1977). In *Lord Corp.*, the plaintiff filed a wrongful

4. Notably, the Act did not always provide the exclusive remedy for workplace injuries. Prior to 1974, participation in the Workers' Compensation system was elective, although there existed a rebuttable presumption that the employer and its employees accepted the compensation scheme. *See, e.g., Bowman v. Sunoco, Inc.*, 65 A.3d 901, 907–08 (Pa.2013); *see also McKinney Mfg. Corp. v. W.C.A.B.*, 9 Pa.Cmwlth. 79, 305 A.2d 59, 61 (1973) (interpreting prior version of Act and noting "[o]ften forgotten or overlooked is the fundamental premise that when the employer and the employee accept the provisions of the Act[,] their relations become contractual and the employee receives the right to compensation under the statute."); *Fonner v. Shandon, Inc.*, 555 Pa. 370, 375, 724 A.2d 903, 905 (1999) (observing that 1974 amendments made it mandatory for employers and employees to participate in the workers' compensation scheme).

death action on behalf of her deceased husband, alleging he died as a result of complications from malignant nodular lymphoma caused by his exposure to toxic and deadly chemicals during his employment with Lord Corp.'s chemical products division. Lord Corp. filed preliminary objections to the complaint, alleging that the claim was barred by the exclusivity provisions of the WCA and the ODA. The trial court granted the preliminary objections and dismissed the complaint. On appeal, the Superior Court reversed, reasoning "the trial court's order granting a demurrer was premature because there had been no determination of compensability and this question could not be resolved from the pleadings." 548 Pa. at 127, 695 A.2d at 768.

On further appeal to this Court, an equally divided Court determined that an employee's common law action is not barred by the exclusivity provision of either the WCA or the ODA until there has been a final determination that the injury or disease in question is cognizable under either Act. The Opinion in Support of Affirmance provided, in relevant part:

This Court has previously examined the question of whether an employee's common law action is barred under circumstances similar to those presented here. In *Boniecke v. McGraw–Edison Co.*, 485 Pa. 163, 401 A.2d 345 (1979), an employee commenced an action in trespass against his employer after being denied relief under the ODA. The employer then filed a motion for summary judgment, contending, as Lord does in the present case, that the ODA and WCA bar all common law actions by an employee against his employer for occupational diseases. This Court rejected the employer's argument, holding that the employee's claims were not barred because although the employee had been denied relief under the ODA, there had been no adjudication of the employee's rights under the WCA, and "there [was] nothing in the record, aside from [the employer's] mere allegations, which would indicate that [the employee was] entitled to relief under the Acts." *Boniecke*, 485 Pa. at 167, 401 A.2d at 347.

We reached a similar conclusion in *Greer* [*v. U.S. Steel Corp.*, 475 Pa. 448, 380 A.2d 1221 (1977)], wherein an employee sought common law recovery for a disease allegedly contracted in the course of employment due to the negligence of the employer. The employer's answer to the complaint claimed, in part, that the employee's exclusive remedy was under the ODA. In rejecting the employer's claim, we reasoned that:

[i]n the pleadings we have no assertion by either side as to whether the existence of [the applicable conditions of the ODA] can or cannot be demonstrated nor have we had any argument by counsel as to who has the burden of proof on the issue. In any event, the uncertainty of this factual question makes it inappropriate for the grant of judgment on the pleadings.

*Greer*, 475 Pa. at 453, 380 A.2d at 1223.

In accordance with our decisions in *Boniecke* and *Greer*, we would hold that an employee's common law action is not barred by the exclusivity provisions of either the WCA or the ODA until there has been a final determination that the injury or disease in question is cognizable under either Act. *See Boniecke; Greer.* Thus, in the present case, if it is determined that decedent's nodular lymphoma is compensable, then Pollard's common law action is barred. Conversely, if the facts do not warrant such a finding, her common law cause of action may be maintained.

*Lord Corp.*, 548 Pa. at 128–29, 695 A.2d at 769 (Opinion in Support of Affirmance) (footnote omitted). According to Appellants, this Court's decisions in *Lord Corp., Boniecke*, and *Greer* support the conclusion that, because their claims are not compensable under the Act, the exclusivity provision of Section 303(a) does not bar their common law claims against Employers.

Employers, however, insist that the workers' compensation system was not intended to provide, in every case, either compensation for a workplace injury or an opportunity to seek redress at common law. Employers contend there is a difference between coverage and compensability under the Act, and

they further suggest that individuals who contract mesothelioma or other latent asbestos-related diseases are not completely without a remedy at common law, as such individuals still may seek compensation from non-employer defendants. Employers additionally maintain that Section 301(c)(2) is a statute of repose which serves as a legitimate temporal limitation on recovery, as opposed to a jurisdictional limitation of the Act.

In support of their argument that the Act's remedies are exclusive, even where compensation is unavailable, Employers cite, *inter alia*, this Court's decision in *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983). In *Kline*, the plaintiff, a painter, was injured when he fell from a ladder. He applied for, and received, workers' compensation benefits for the month he was disabled. Subsequently, the plaintiff sought workers' compensation benefits for impotency resulting from his fall. When he was denied benefits, the plaintiff filed suit against his employer, alleging negligent conduct by another employee as the cause of his injury. Summary judgment was granted in favor of the employer, and, on appeal, this Court held the Act was the exclusive avenue of compensation. We explained:

> To change, alter or abolish a remedy lies within the wisdom and power of the legislature and in some instances, the courts. Access to a tribunal is not denied when the tribunal has no jurisdiction to entertain either the claim or the remedy. Time and circumstances require new remedies to adjust to new and unforeseen losses and conditions. To do so, facets of the society often require new immunities or larger responsibility, as the legislature may determine. The workmen's compensation law has deprived some of rights in exchange for surer benefits, immunized some, to make possible resources to benefit many, who where [sic] heretofore without possible or practical remedies.

*Id.* at 255, 469 A.2d at 160.

Employers additionally assert that this Court "recognized the crucial distinction between 'coverage' and 'compensation' under the WCA in *Moffett v. Harbison–Walker Refractories Co.*, 339 Pa. 112, 14 A.2d 111 (1940)." Brief for Oglebay at 29;

*see also* Brief of ESAB/Chemetron at 25. In *Moffett,* a partially-disabled employee sought relief at common law for work-related silicosis because the WCA and the ODA provided relief only for total disability. In holding the WCA provided the exclusive avenue of compensation, this Court stated:

> the original act, providing for accidental injuries, allowed no compensation until after a definite period, provided no compensation to nonresident dependents, and allowed nothing for disfigurement. That was the legislative policy and was well understood when the supplement of 1937 was passed. In harmony with that policy, the legislature, in providing for compensation for silicosis, made other exceptions: section 5(a) provided it 'shall be paid only when it is shown that the employe has had an aggregate employment of at least two years in the Commonwealth of Pennsylvania, during a period of eight years next preceding the date of disability, in an occupation having a silica or asbestos hazard.' It is inconceivable that the legislature intended, for example, that a person recently come into the state, and becoming totally disabled, within two years, should have the right to sue in tort and that after two years he should be subject only to the compensation statute. We think in each case the employe's contract resulted from the statute and in each case was the same; he gave up his right to sue in tort for the absolute certainty provided by the Act of receiving the compensation on bringing himself within its compensatory clauses. By coming under the Act, plaintiff surrendered his right, in the words of the Act 'to any method of determination thereof, other than as provided, in article three.'

339 Pa. at 115–16, 14 A.2d at 113.

Upon review, it is evident that this Court's decisions in *Lord, Greer,* and *Boniecke* support Appellants' construction of the Act. *See Sporio, supra.* Moreover, we find neither *Kline,* nor *Moffett,* compels the conclusion for which Employers advocate. With respect to Employers' reliance on *Moffett,* we note that *Moffett* was decided prior to 1974, when participation in the workers' compensation system was elective, and em-

ployees could opt out of a system which might deprive them of compensation for an entire category of injuries. *See supra* note 4. Employees no longer have that option, and are required to participate in a system that likely will deny them the opportunity to seek compensation from their employer for any late-manifesting work-related injuries.

Furthermore, in *Kline*, this Court recognized that "the injury suffered was clearly within the scope of the Act and the appellant was fully compensated under the Act." 503 Pa. at 255, 469 A.2d at 160. Unlike the plaintiff in *Kline*, Appellants herein did not and, indeed, *could not* seek any compensation under the Act, given the fact that their injuries did not manifest until nearly 780 weeks (in the case of Mr. Landis), and 1300 weeks (in the case of Mr. Tooey), after their employment-based exposure to asbestos. Indeed, the average latency period for mesothelioma is 30 to 50 years. *See Daley v. A.W. Chesterton, Inc.*, 614 Pa. 335, 37 A.3d 1175, 1188 (2012). Even mesothelioma that manifests at the lower end of this average will not occur for decades following an employee's exposure to asbestos. Thus, Section 301(c)(2)'s 300–week time window operates as a *de facto* exclusion of coverage under the Act for essentially all mesothelioma claims.[5]

Recently, in *Bowman, supra,* this Court again considered the historical development of the Act. In *Bowman,* we addressed the issue of whether a third-party workers' compensation release signed by an employee as a condition of her employment was void against public policy to the extent the language of the release conflicted with the language of Section 204(a) of the Act. We determined that the release was enforceable and not against public policy, as Section 204(a) prohibits

5. The dissent, challenging our *de facto* exclusion conclusion, is correct in noting that the latency period is measured from the first exposure, whereas the 300–week time period is measured from the last exposure, and that, as a result, some mesothelioma claims could theoretically be covered by the Act for persons "who have had a long occupational history of exposure." Dissenting Opinion at 96 n.12, 81 A.3d at 873 n.12. However, we question the size of such a group, as, essentially, such persons would have to have had asbestos exposure at the beginning, and continuously up and towards the end (less 300 weeks), of a 30 to 50 year period of employment.

agreements to waive workers' compensation claims only against the employer, not third parties. In reaching our conclusion, we observed:

> The Act, as originally conceived, established a dual system of recovery for injured employees against their employers— principally through the Article III schedule, but, barring that, through an action at law under Article II.
>
> Article II remains in the Act, although modified considerably. Section 204(a) now contains a series of provisions pertaining only to offsets enjoyed by the employer to be applied to specific compensation benefits an employer is obligated to pay under §§ 108 or 306 of the Act. In addition, § 305(d) explicitly provides an action at law pursuant to Article II continues to be available to any employee whose employer is either uninsured or not an approved self-insurer. *See* 77 P.S. § 501(d) ("When any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2, the injured employee or his dependents may proceed either under this act or in a suit for damages at law as provided by article II.").

*Bowman*, 65 A.3d at 908 (footnote omitted). We noted that the Act, in providing for a dual system of recovery, "made it a violation of public policy for an employer to avoid *both* recovery tracks." *Id.* Were this Court to interpret Section 301(c)(2) as Employers suggest, and hold that Appellants are precluded from seeking damages at common law for their injuries, notwithstanding their inability to seek compensation under the Act, we would enable exactly what this Court in *Bowman* recognized the Act was intended to prohibit—an employer's avoidance of liability through both recovery tracks.

Indeed, the consequences of Employers' proposed interpretation of the Act to prohibit an employee from filing an action at common law, despite the fact that employee has no opportunity to seek redress under the Act, leaves the employee with *no remedy* against his or her employer, a consequence that clearly contravenes the Act's intended purpose of benefitting the injured worker. It is inconceivable that the legislature, in enacting a statute specifically designed to benefit employees,

intended to leave a certain class of employees who have suffered the most serious of work-related injuries without any redress under the Act or at common law.

The dissent suggests that allowing employees to seek damages at common law when they cannot proceed under the Act "would expose employers to potentially unlimited liability for occupational diseases, an exposure that could undermine the compromise of interests" between the employers and employees manifest in the Act. Dissenting Opinion at 93, 81 A.3d at 871. The dissent fails to acknowledge, however, as we have repeatedly emphasized, that the Act is "remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Giant Eagle,* 39 A.3d at 290; *see also Lancaster Gen. Hosp.,* 47 A.3d at 839. Thus, close interpretations should be resolved in favor of the employee.

Furthermore, we recognize that Section 301(c)(2), which requires that an occupational disease-based disability manifest within 300 weeks of an employee's last exposure to the hazards of the disease, "was intended to prevent stale claims, and prevent speculation over whether a disease is work-related years after an exposure occurred." *Sporio,* 553 Pa. at 50, 717 A.2d at 528 (citation omitted). However, allowing an employee to seek recovery for occupational disease-based injuries at common law when the disease does not manifest within 300 weeks of the last employment-based exposure does not, in and of itself, malign this objective. Employers, like any other entity not covered by the Act, will be subject to traditional tort liability requiring a showing by the plaintiff of, *inter alia,* negligence on the part of the employer, and employers will retain all of their common law defenses. Plaintiffs, in turn, will bear the higher burden of proof in terms of causation and liability.[6] As a result, contrary to the dissent's claim, employ-

6. As this Court recognized in *Daley v. A.W. Chesterton, Inc.,* 614 Pa. 335, 37 A.3d 1175 (Pa.2012), mesothelioma is an extremely rare disease, even among persons exposed to asbestos, and only between 1000 and 2000 cases of mesothelioma are diagnosed in the United States each year. 37 A.3d at 1188–89.

ers are not exposed to "potentially unlimited liability." Dissenting Opinion at 87, 81 A.3d at 871.

Thus, consideration of the relevant factors set forth in 1 Pa.C.S.A. § 1921(c), particularly the remedial purpose of the Act and the consequences of both Employers' and Appellants' proposed interpretations, indicates the legislature did not intend the Act to apply to claims for disability or death resulting from occupational disease which manifests more than 300 weeks after the last occupational exposure.

For the above reasons, we conclude the Act does not apply to Appellants' claims. As a result, we hold that the exclusivity provision of Section 303(a) does not preclude Appellants from seeking compensation for their injuries via a common law action against Employers, and, therefore, we reverse the Superior Court's decision reversing the trial court's denial of Employers' motion for summary judgment.[7]

Reversed. Case remanded to Superior Court for remand to the trial court for further proceedings.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices EAKIN, BAER and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

I respectfully dissent, as I would find that the diseases in question were meant to be covered by the terms of the Workers' Compensation Act, but that compensation is unavailable due to the expiration of the 300–week statutory period. Thus, I would find that the constitutional claims raised by Plaintiffs have become salient and that the Attorney General should be given an opportunity to participate. My reasoning follows.

7. In light of our holding, we need not address Appellants' constitutional claims.

As described by the majority, Plaintiffs contend, based on their reading of Section 301(c)(2) of the Workers' Compensation Act ("WCA"),[1] that their common-law claims are not barred by the exclusive-remedy provision appearing in Section 303(a) of the WCA, *see* 77 P.S. § 481, because their injuries are not covered by the act due to the expiration of the 300–week limitation period. Plaintiffs acknowledge that their diseases are "potentially" covered in light of Section 108(*l*).[2] However, they repeat an argument they made to the common pleas court, that a proviso appearing in Section 301(c)(2) ultimately precludes such coverage. That provision states, in relevant part:

> The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include ... occupational disease as defined in section 108 of this act [*i.e.*, 77 P.S. § 27.1]: *Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment* in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. . . .

77 P.S. § 411(2) (emphasis added). As noted by the majority, Plaintiffs have contended throughout this litigation that the above should be interpreted to remove their injuries entirely from the scope of the WCA, which in turn would render Section 303(a)'s exclusivity clause inapplicable. Plaintiffs support this position by adverting to rules of grammar, arguing that the "it" in "it shall apply" refers to "this act" rather than

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1; 2501–2626).

2. The parties agree that Employees' injuries fall within the Section 108(*l*) definition of "occupational disease." *See* 77 P.S. § 27.1(*l*) (defining the term to include "[a]sbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure").

"the basis for compensation." They observe that pronouns often substitute for the immediately preceding noun, *see* Brief for Appellants at 16 (citing THE CHICAGO MANUAL OF STYLE § 5.34 (15th ed. 2003)), and argue that, generally speaking, an act may "apply," whereas a "basis for compensation" is not ordinarily said to "apply."

As a fallback position, Plaintiffs reason that, to the extent Section 301(c)(2) may be ambiguous, such ambiguity should be resolved in favor of permitting a tort cause of action to proceed, since that interpretation will be less likely to raise constitutional difficulties such as a potential violation of the Remedies Clause. *See* PA. CONST. art. 1, § 11 ("[E]very man for an injury done him in his land, goods, person or reputation shall have remedy by due course of law . . . ."). Additionally, they posit that considerations such as the object to be attained and the consequences of a particular interpretation, *see* 1 Pa.C.S. § 1921(c), militate in favor of their proffered construction. Here, Plaintiffs note that the WCA establishes a *quid pro quo* whereby an employer assumes no-fault liability but is shielded from potentially greater liability at common law, while the employee receives expeditious compensation but forgoes some elements of damages. *See Alston v. St. Paul Ins. Cos.*, 531 Pa. 261, 267, 612 A.2d 421, 424 (1992). They assert that the *quid pro quo* cannot be effectuated in cases such as theirs where the latency period is greater than 300 weeks, and that such time limitation, if interpreted according to the Superior Court's reasoning, is inconsistent with the WCA's goal of expanding the ability of employees to obtain compensation for work-related injuries. Anticipating that Employers will argue that allowing a common-law remedy would undermine the act's objective of limiting employer liability, Plaintiffs contend that, to the degree the legislation is designed to limit liability, it is only intended to limit no-fault (or absolute) liability. They point out that in a common law cause of action Employers' liability would not be absolute because Plaintiffs would be required to demonstrate negligence and causation. *See* Appellants' Brief at 19–20.

Finally, Plaintiffs bolster their position by reference to case law from this jurisdiction and one sister State. They draw attention, first, to *Lord Corp. v. Pollard,* 548 Pa. 124, 695 A.2d 767 (1997), on which the common pleas court relied in denying Employers' motions for judgment on the pleadings. In *Pollard,* this Court was evenly divided, and one group of Justices reasoned that the employer's demurrer to an employee's negligence claim should not be sustained unless it was clear from the pleadings that the injury was cognizable under either the WCA or the Occupational Disease Act of 1939 (the "ODA").[3] *See id.* at 129, 695 A.2d at 769 (Opinion in Support of Affirmance). The extra jurisdictional decision, *Stratemeyer v. Lincoln County,* 276 Mont. 67, 915 P.2d 175 (1996), involved a so-called "mental-mental" injury—that is, a mental injury caused by mental stress—which was categorically excluded from coverage under that state's workers' compensation statute. The Montana court concluded that, where there is no possibility of recovery under the statute, the central *quid pro quo* is defeated, and hence, the concept of remedy exclusivity is inapplicable—meaning that the employer was exposed to potential common law tort liability. *See id.* at 180–81.

Employers respond that the workers' compensation scheme was enacted pursuant to an express grant of legislative power reflected in the state charter, *see* PA. CONST. art. III, § 18, and that it was intended by the General Assembly to operate as a comprehensive substitute for common-law tort liability based on concepts of efficiency and compromise.[4] They maintain that the WCA embodies a compromise whereby employers are

3. Act of June 21, 1939, P.L. 566, No. 284 (as amended 77 P.S. §§ 1201–1603). The ODA contains an exclusivity provision that this Court has described as "very similar" to that of the WCA. *Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 34, 555 A.2d 766, 769 (1989). *Compare* 77 P.S. § 1403 (ODA's exclusivity clause), *with* 77 P.S. § 481, Historical and Statutory Notes (reflecting the WCA's exclusivity clause as it existed prior to a 1974 amendment).

4. Chemetron and the ESAB Group, the employer parties in the Landis litigation, have filed one brief, and Oglebay Norton Company, the employer party in the Tooey case, has filed a separate brief individually and on behalf of its Ferro Engineering division. Because the arguments overlap substantially, they are summarized together except where otherwise noted.

made liable without regard to fault, while employees forfeit the right to recover greater sums at common law. Employers indicate that remedy exclusivity is integral to the compromise, is firmly entrenched in Pennsylvania law, and is applicable even in instances where no compensation is available due to the expiration of a time limitation—as otherwise employers would be exposed to potentially unlimited liability, which would be contrary to legislative intent. They state that the Commonwealth Court has expressly endorsed this view by pointing out that, while arbitrary time limits may at times seem harsh in their effects, they are necessary because of the practical limits on the amount of benefits that can reasonably be provided—and that such limitations "must be established by the Legislature possessed of all the [actuarial] facts, not by a court deciding one case, however unfortunate." Brief for Oglebay at 34 (quoting *Bethlehem Steel Co. v. Gray*, 4 Pa. Cmwlth. 590, 594, 288 A.2d 828, 829–30 (1972) (*en banc*)).

As a matter of textual analysis, Chemetron initially stresses the disjunctive nature of the language used in the exclusivity provision (Section 303(a) of the WCA), noting that employer liability is made to exist in place of all other liability on account of injury or death as defined in section 301(c)(1) and (2) *or* occupational disease as defined in Section 108. *See* 77 P.S. § 481(a). Thus, since it is undisputed that mesothelioma is an occupational disease as defined in Section 108, *see supra* note 2, Chemetron proffers that this alone is sufficient to implicate remedy exclusivity without consulting Section 301(c)(2). Alternatively, Employers state that, even if Section 301(c)(2) is deemed controlling, Plaintiffs' grammatical analysis is in error since the antecedent of the pronoun "it" in the phrase "it shall apply" is not the word "act," but "compensation," and that this construction is appropriate because the commas surrounding the phrase, "for disability or death under this act," signify that the clause is a nonrestrictive one—that is, it contains parenthetical, explanatory information, and as such, the commas may be replaced with parentheses without altering the meaning. *See, e.g.*, Brief for Chemetron at 20 (citing, *inter alia*, WILLIAM STRUNK, JR. & E.B. WHITE, THE

ELEMENTS OF STYLE 2–5 (3d ed. 1979), and THE CHICAGO
MANUAL OF STYLE § 5.29 (13th ed. 1982)). This is significant,
according to Employers, because it shows that the statutory
proviso was not intended to negate the act's coverage of
mesothelioma, and any covered disease is subject to the rule of
exclusivity even where the injury is ultimately non-compensa-
ble on some independent basis (such as the expiration of a
limitation period).[5]

Moreover, Employers argue that cases such as *Pollard,* on
which Plaintiffs rely for the contrary position, actually support
Employers' argument since the determinative issue in those
matters was whether the disease or injury was of a type that
was encompassed by the WCA, and not whether the individual
plaintiff's particularized circumstances foreclosed compensabil-
ity. As applied here, Employers reason that, although Plain-
tiffs' disease first manifested beyond the 300–week period,
their condition fell within the WCA's ambit—*i.e.,* was covered
by the WCA—and hence, Section 303(a) exclusivity applies
notwithstanding non-compensability. *See generally* Brief for
Chemetron at 26 (citing *Kline v. Arden H. Verner Co.,* 503 Pa.
251, 255, 469 A.2d 158, 160 (1983) (suggesting that the WCA
has "immunized some [employers] to make possible resources
to benefit many, who [were] heretofore without possible or
practical remedies")).

As for Plaintiffs' argument pertaining to the WCA's embodi-
ment of a *quid pro quo,* Employers offer that the central *quid
pro quo* transcends individual cases and pertains to employees
and employers as a class who give up certain rights in
exchange for others. Employers maintain that the balancing
of these rights was performed by the Legislature and that
Plaintiffs' disagreement is with that body. Oglebay also im-
plies that the harshness of particular outcomes ensuing from
this legislative compromise is mitigated because workers who
develop long-latency asbestos diseases may seek redress from
non-employer defendants. It avers that, here, Plaintiffs filed

5. *Cf. Weldon v. Celotex Corp.,* 695 F.2d 67, 71 (3d Cir.1982) (applying
similar reasoning within the framework of the ODA); *Kilvady v. U.S.
Steel Corp.,* 90 Pa.Cmwlth. 586, 592, 496 A.2d 116, 120 (1985) (same).

actions against numerous entities, and that the Tooey plaintiffs in particular have already obtained settlements from several of them, as reflected in the Supplemental Reproduced Record. Oglebay asserts, in this regard, that individuals who develop asbestos-related cancers may avail themselves of claims procedures with various bankruptcy trusts established to compensate individuals exposed to the asbestos-containing products of now-insolvent companies.

As noted, Chemetron initially suggests that the dispute can be resolved solely by reference to Section 303(a) in view of its disjunctive phraseology and its reference to Section 108. That provision states, in full:

> The liability of an employer under this act *shall be exclusive* and in place of any and all other liability to such employe[e], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) [77 P.S. § 411(c)(1) and (2) ] *or occupational disease as defined in section 108* [77 P.S. § 27.1].

77 P.S. § 481(a) (emphasis added). The above represents a forceful statement by the Legislature that it intends for both injuries and occupational diseases to be treated uniformly under the act and, more particularly (in my view, at least), to be covered by the remedies prescribed thereunder to the exclusion of common-law remedies. Thus, Employers understandably seek to rely on its language as a shield against common law suits without reference to other provisions. Still, Sections 303(a) and 108 are part of the WCA's overall scheme pertaining to liability for occupational diseases. That scheme also subsumes Section 301(c)(2), which makes the diseases enumerated in Section 108 compensable by classifying them as injuries (thus triggering potential liability under Section 301(a)), *see generally Brockway Pressed Metals v. WCAB (Holben)*, 948 A.2d 232, 234 (Pa.Cmwlth.2008), and additionally contains the specific 300–week limitation at issue here. Therefore, the analysis would be incomplete if Sections 303(a) and 108 were viewed in isolation. Rather, this Court should

also evaluate whether the General Assembly intended that occupational diseases manifesting more than 300 weeks after the last employment-based exposure to the hazard should be subject to WCA remedy exclusivity even where benefits are unavailable.[6] *See generally Allstate Life Ins. Co. v. Commonwealth,* 617 Pa. 1, 6–8, 52 A.3d 1077, 1080–81 (2012) (Opinion in Support of Affirmance) (observing that statutes or parts of statutes *in pari materia* should be construed together, with the court giving effect to each provision, if possible (citing 1 Pa.C.S. §§ 1921(a), 1932)).

As recited by the majority, the parties' first point of contention centers on whether the pronoun "it" in the phrase "it shall apply" refers back to "act" or "compensation." Plaintiffs claim that "it" refers to "act," so that late-manifesting occupational diseases are entirely removed from the scope of coverage under the WCA, with the result that the enactment's exclusivity clause has no present application. However, the proviso's most natural reading is that "under this act" simply modifies "disability or death," and not that it was intended to provide the predicate for the following pronoun. *See* 1 Pa.C.S. § 1903(a) (directing that words and phrases should ordinarily be interpreted according to rules of grammar and their common and approved usage). Similarly, the grammatical structure of the proviso, including its placement of commas, militates against Plaintiffs' reading. *See generally United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (deeming comma placement significant in arriving at a statute's plain meaning).[7] In

6. Although Section 301(c)(2) references the employee's "last date of employment," 77 P.S. § 411(2), this Court has stated that the 300-week period begins on the last day of employment-based exposure to the hazard. *See Sporio v. WCAB (Songer Constr.),* 553 Pa. 44, 50, 717 A.2d 525, 528 (1998); *Cable v. WCAB (Gulf Oil/Chevron USA),* 541 Pa. 611, 615, 664 A.2d 1349, 1351 (1995) (plurality). Any distinction along these lines is immaterial to the resolution of these appeals, however, since Employees' mesothelioma manifested more than 300 weeks after both occurrences.

7. Because the current version of Section 301(c)(2) was finally enacted after December 31, 1964, its punctuation may be considered. *See* 1 Pa.C.S. § 1923(b); *Cash Am. Net of Nevada, LLC v. Dep't of Banking,* 607 Pa. 432, 451 n. 5, 8 A.3d 282, 294 n. 5 (2010).

particular, the phrase, "for disability or death under this act," is set off from the main flow of the sentence by a pair of commas. This indicates that it is a "nonrestrictive" clause containing explanatory or descriptive information that is parenthetical in nature. *See Cash Am.*, 607 Pa. at 450–51 & n. 4, 8 A.3d at 293 & n. 4.[8] As such, the commas could be replaced with parentheses without changing the sentence's essential meaning. *See id.* at 446–47, 8 A.3d at 291; *In re Gallagher*, 332 Or. 173, 26 P.3d 131, 136–37 (2001) (citing CHICAGO MANUAL OF STYLE § 5.41, at 167–68 (14th ed. 1993), and WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE, 3–4 (3d ed. 1979)). Hence, the pronoun "it" must refer back to a noun appearing in the sentence prior to the nonrestrictive clause.[9] The only such noun that could reasonably serve as the pronoun's antecedent is "compensation." It follows that the proviso states, in effect, that "whenever occupational disease is the basis for compensation (for disability or death under this act) [compensation] shall apply only to disability or death" occurring within the 300–week period. This understanding is consistent with the Legislature's stated intention that the act should "apply to *all injuries* occurring within this Commonwealth," 77 P.S. § 1 (emphasis added), a point the majority overlooks.

I would conclude, then, that the plain meaning of the proviso is more limited than Plaintiffs contend and the majority concludes: in my view, it states that compensation is

**8.** *Accord Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 798 (8th Cir.2010); *DiFiore v. Am. Airlines, Inc.*, 561 F.Supp.2d 131, 135 (D.Mass.2008); *In re Jessi W.*, 214 Ariz. 334, 152 P.3d 1217, 1220 (Ct.App.2007); *Kasischke v. State*, 991 So.2d 803, 812 (Fla.2008); *Xcel Corp. v. Div. of Taxation*, 4 N.J.Tax 85, 89–90 (N.J. Tax Ct.1982) (citing LEGGETT ET AL., PRENTICE-HALL HANDBOOK FOR WRITERS (5th ed. 1970), 124–125); *Ingram v. Carruthers*, 194 Tenn. 290, 250 S.W.2d 537, 538 (1952); *Griffin v. State*, 2004 WL 1277567, at *2 (Tex.Ct.App.2004) (citing MARGARET SHERTZER, THE ELEMENTS OF GRAMMAR 7, 87 (1st ed. 1986), and TEXAS LAW REVIEW, MANUAL ON USAGE, STYLE, & EDITING B:4:1 (9th ed. 2002)); *State v. Tunney*, 77 Wash.App. 929, 895 P.2d 13, 16 (1995).

**9.** The majority suggests that "it" may refer to the word "act" in the phrase "as used in this act," which appears in a sentence extrinsic to the proviso. *See* Majority Opinion, at 73 n.3, 81 A.3d at 859 n.3. To my mind, such a reading seems overly attenuated.

unavailable for late-manifesting occupational diseases, but it does not state that the WCA has no application with regard to such diseases. Further, the parties, as noted, agree that Plaintiffs' illnesses fall within the definition of a covered occupational disease for purposes of the act, and Plaintiffs do not suggest any other, independent, aspect of the statute as a basis to conclude that employer liability for their illnesses is not governed by the WCA. *See generally* 77 P.S. § 431 (making employers liable for all work-related injuries with certain exceptions not presently relevant). Still, Plaintiffs assert that their inability to obtain compensation due to the expiration of the 300–week time interval affects Section 303(a)'s command that the liability of an employer under the WCA is "exclusive and in place of any and all other liability[.]" 77 P.S. § 481(a). Referencing *Pollard* and *Stratemeyer,* they maintain that the presence or absence of actual compensation is the litmus for whether remedy exclusivity applies. *See* Appellants' Brief at 22, 24. For the following reasons, I disagree.

Workers' compensation is social legislation. Thus, the issue forwarded here touches on social policy which, of course, is the primary domain of the Legislature. The advent of workers' compensation laws in the early twentieth century accomplished two things broadly described in terms of a compromise between the interests of employers and employees. It gave employees compensation based solely on a loss of earning power, and it immunized employers from large and unexpected costs they might incur through the tort system. *See Shick v. Shirey,* 552 Pa. 590, 603, 716 A.2d 1231, 1237 (1998) (describing this compromise). This system provided employers better means of predicting the costs of doing business, while workers also gained in the aggregate because, under the old common law system, most injuries remained uncompensated notwithstanding the presence, in many cases, of employer negligence or adverse workplace conditions. *See Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes,* 96 HARV. L. REV. 1641, 1641 n.2 (1983) (citing W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 80, at 526, 530 &

n.32 (4th ed. 1971) (70% to 94% uncompensated), and COMPEN-
DIUM ON WORKMEN'S COMPENSATION 11 (NAT'L COMM'N ON STATE
WORKMEN'S COMPENSATION LAWS ed. 1973) (workers recovered
for 15% of injuries, although 70% involved employer negli-
gence or workplace conditions)). Such a system inevitably
contained limitations on compensation, both in the form of
time restrictions (due to its essentially administrative nature)
and in terms of substantive limitations on liability. This was
necessary in order that the administrative scheme could func-
tion with some regularity and so that the aggregate of payouts
could remain practically affordable.

Plaintiffs' argument—that, since the act is designed to
provide reasonable indemnity to employees who sustain work-
related injuries, when such indemnity is lacking employees
should have access to the courts as a forum to obtain a
remedy—has some logical force. The main difficulty, howev-
er, when the broad policy goals are considered, is that such a
result would expose employers to potentially unlimited liability
for occupational diseases, an exposure that could undermine
the compromise of interests described above.[10] In this regard,
one of our federal colleagues has aptly stated that, through
the WCA, the Legislature has created a "comprehensive statu-
tory scheme encompassing all injuries arising out of accidents
occurring within the course of employment." *Hartwell v.
Allied Chem. Corp.*, 320 F.Supp. 75, 77 (W.D.Pa.1970).

Supporting *Hartwell's* observation is that the legislative
trend in the workers' compensation arena has consistently
been to expand the WCA's reach to ever greater classes of
injury. For example, while the legislation originally covered
only accidents, it was later amended to bring non-accidental
injuries within its scope. Further, the definition of "injury"
was eventually changed from "violence to the physical struc-
ture of the body" to any work-related "injury to an employe,

**10.** In criticizing this observation, the majority appears to view the act
as designed solely for the benefit of injured workers. *See* Majority
Opinion, at 80–82, 81 A.3d at 864–65. That is indeed one of the central
aims of the statute. However, the broader historical context, including
the essential underlying compromise, is also relevant to ascertaining
legislative intent.

regardless of his previous physical condition[.]" Act of March 29, 1972, P.L. 159, No. 61, § 7 (amending Section 301(c)). Thereafter, occupational diseases were brought within the ambit of the WCA. *See* Act of Oct. 17, 1972, P.L. 930, No. 223, §§ 1, 2 (adding Section 108 and 301(c)(2)). As well, the Legislature eventually changed the nature of the scheme from an elective system to a mandatory one. *See* Act of Dec. 5, 1974, P.L. 782, No. 263; *Bible v. Dep't of Labor & Indus.*, 548 Pa. 247, 254–56, 696 A.2d 1149, 1152–53 (1997); *Lewis v. Sch. Dist. of Phila.*, 517 Pa. 461, 471–72, 538 A.2d 862, 867 (1988). Hence, the legislative motivation and movement has been to steadily broaden the act's coverage while foreclosing recourse against the employer in tort for negligence. *See Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 519–20, 412 A.2d 1094, 1097 (1980). At the same time, the General Assembly has designated the WCA as the "sole and exclusive" means of recovery against employers for all workplace injuries. *Hackenberg v. SEPTA*, 526 Pa. 358, 370, 586 A.2d 879, 885 (1991); *see* 77 P.S. §§ 1, 481(a). *See generally Pawlosky v. WCAB (Latrobe Brewing Co.)*, 514 Pa. 450, 461, 525 A.2d 1204, 1210 (1987) ("[T]he legislature, by including occupational diseases in the Act's concept of 'injury,' was attempting to create a unified, integrated compensation law for all work-related harm . . . .").

Within this historical development, moreover, the General Assembly's particular treatment of occupational diseases is also germane. The Assembly was initially disinclined to provide no-fault compensation for disease victims and, indeed, it waited twenty-two years after the enabling constitutional amendment was ratified to bring such work-related illnesses within the act's scope. There were various reasons for this delay, including problems of proof in difficult etiological contexts, *see Sporio*, 553 Pa. at 50, 717 A.2d at 528 (expressing that the disease manifestation requirement serves, *inter alia*, to "prevent speculation over whether a disease is work-related years after an exposure occurred"), and a "fear that the compensation system could not bear the financial impact of full liability for dust diseases." 3 ARTHUR LARSON, WORKMEN'S

COMPENSATION LAW § 41.81 (1983). Thus, when the General Assembly ultimately incorporated diseases into the system, it was careful to cabin employers' liability using devices such as defined manifestation periods. *See* Act of July 2, 1937, P.L. 2714, No. 552, § 6(b) (repealed) (reflecting a two-year period); Act of June 21, 1939, P.L. 566, No. 284, § 301(c) (reflecting a four-year period under the ODA).

These limitations appear to represent an exercise in legislative line-drawing stemming from a generalized aversion toward holding employers liable to *all* disease victims under a strict-liability scheme. *Accord* David B. Torrey, *Time Limitations in Pennsylvania Workmen's Compensation and Occupational Disease Acts: Theoretical Doctrine and Current Applications*, 24 DUQ. L. REV. 975, 1013 (1986) (hereinafter, *"Time Limitations "*). More to the point, they do not reflect an intent that, if the disease occurs outside the defined time period, the employee should remain free to prosecute a lawsuit in tort. Rather, the legislative sense has been that, if latent diseases are to be compensable on an absolute-liability basis, businesses and insurers at least need to be able to make rough predictions concerning the cost of coverage, which would be significantly more difficult absent some time-based prerequisite to compensability for diseases that may occur years after employment has ended. *See* BOND & SILVER, *Workers' Compensation[:] Employers and Insurers Present Their Side of the Case*, PENNA. L.J. RPTR., Aug. 5, 1985, at 8 ("Although we are not aware of the legislative intent behind the [300–week] time requirement, it seems to be [an] example of legislative line-drawing intended to afford employers and insurers reasonable limits on their exposure under the act."), *quoted in Time Limitations*, 24 DUQ. L. REV. at 1015 n.196.[11] In light of

11. *See also Time Limitations*, 24 DUQ. L. REV. at 1015 ("The disease manifestation provisions [of the WCA and ODA] are unique creatures of the statutory scheme ... reflecting ... the simple legislative judgment that employers are to be relieved of at least some of the liability which might possibly accrue, by means of an arbitrary time limit on the manifestation of disability-causing diseases."); *id.* at 979 ("Having sacrificed its common law defenses, the employer faces increased and almost certain liabilities; it is thus reasonable that at least the time frame within which such liability may accrue is established clearly.");

these considerations, to conclude, as Plaintiffs urge, that the absence of compensability was intended by the Legislature to alone negate remedy exclusivity, would be inconsistent, not only with the Legislature's expressed intent that the act apply to "all injuries" occurring within Pennsylvania, but with its motivation for imposing time limitations on disease compensability. All of this militates against a litmus based solely on the availability of compensation under the circumstances.[12]

*cf.* 3 Arthur Larson, Workers' Compensation Law § 53.03 (criticizing such substantive limitations on compensability as leading to inequities for workers suffering from long-latency occupational diseases, including asbestos-related ailments).

12. To the degree the majority suggests that the long latency period associated with mesothelioma "operates as a *de facto* exclusion of coverage under the Act for essentially all mesothelioma claims," Majority Opinion, at 80, 81 A.3d at 863, the majority is mistaken. The latency period is measured from the first exposure, *see, e.g., Jones v. United States,* 751 F.Supp.2d 835, 840–41 (E.D.N.C.2010) (referencing the definition of "latency period" provided by the Centers for Disease Control and Prevention), whereas the 300–week statutory interval is measured from the last exposure. *See supra* note 6. This distinction is significant for persons who have had a long occupational history of exposure. The majority responds by pointing out that many workers may fall outside such a group. *See* Majority Opinion, at 79–80 n.5, 81 A.3d at 863–64 n.5. Indeed, the rights of some workers will undoubtedly be negatively affected by legislative line drawing. However, legislation by its nature involves line-drawing and classifications. *Accord Ryan v. Burlington County,* 889 F.2d 1286, 1291 (3d Cir.1989). Our initial task exclusive of Appellants' separate constitutional claims, is not to judge the wisdom of specific lines the Legislature has chosen to draw, but to endeavor to ascertain that body's intention at the time it drew them. Here, I see no reason to suppose that the General Assembly, when it brought diseases within the scope of the Act beginning in 1937 or moved from an elective to a mandatory scheme in 1974, meant to leave employers open to suit in the event the disease in question would manifest beyond the period of repose. Indeed, the decisions this Court rendered in the era when diseases were incorporated point in the opposite direction—namely, that if a particular type of work-related injury is covered by the Act, the lack of compensability under the circumstances does not render the employer liable to common-law tort liability—and the majority's protestation that it is "inconceivable" that the Legislature would have intended such a result, Majority Opinion, at 79, 81 A.3d at 863, is difficult to reconcile with such cases, which are briefly discussed below. Finally, to the extent the majority suggests *Bowman v. Sunoco, Inc.,* 620 Pa. 28, 65 A.3d 901 (2013), prohibits such a result based on public policy, the majority misapplies *Bowman.* The policy referenced in that case relates to preventing an employer, through an exercise of bargaining power, from requiring an employee

Nor does Plaintiffs' position find support in our case precedent. To the contrary, where an injury is of a class that is cognizable under the WCA, this Court has virtually always construed the enactment to foreclose an action at law even if compensation is ultimately unobtainable. In *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983), for example, the Court affirmed remedy exclusivity although the worker could not receive compensation for some of the injuries he sustained in a work-related accident. *Kline* explained that the act's remedies are exclusive even where compensation is unavailable, because the WCA by its terms "covers *'all injuries,'* and the exclusivity clause bars tort actions flowing from *any* work-related injury." *Id.* at 256, 469 A.2d at 160 (emphasis in original); *see also Scott v. C.E. Powell Coal Co.*, 402 Pa. 73, 77–78, 166 A.2d 31, 34 (1960) (explaining that, when an employee sustains injuries that bring him within the provisions of the WCA, such provisions determine the amount he may be compensated and, as such, provide the exclusive remedy even if no compensation is available); *Moffett v. Harbison–Walker Refractories Co.*, 339 Pa. 112, 117, 14 A.2d 111, 113–14 (1940) (enforcing remedy exclusivity relative to a plaintiff who suffered a disability due to work-related silicosis but was unable to obtain any compensation because his disability was only partial; the Court reasoned that the Legislature's provision of benefits for total silicosis disability manifested an intent to bring all silicosis sufferers under the act). *See generally* 7 DAVID B. TORREY & ANDREW E. GREENBERG, PENNSYLVANIA WORKERS' COMPENSATION LAW & PRACTICE § 10.15 (3d ed. 2011) ("It is . . . the rule under the [WCA] that a common law action is barred even if there is no specific recovery available under the [WCA].").

Conversely, where courts have permitted an action at law for a work-related disease, the illness in question was of a type that was totally excluded from the definition of a compensable injury. Thus, in *Billo v. Allegheny Steel Co.*, 328 Pa. 97, 195 A. 110 (1937), the plaintiff's lawsuit was permitted because no

to relinquish his rights under the Act in the pre-injury timeframe. *See*

occupational diseases had yet been brought within the scope of the act, *see id.* at 99–100, 195 A. at 112, and indeed, *Moffett* expressly distinguished *Billo* on that basis. *See Moffett,* 339 Pa. at 117, 14 A.2d at 114.[13] The reasoning of *Pollard's* Opinion in Support of Affirmance is similar. Although that opinion, at one point, appears to predicate the existence of a common law claim on the lack of "compensab[ility]," *see Pollard,* 548 Pa. at 129, 695 A.2d at 769, the use of the term is imprecise in context because the focus of the opinion is on whether the injury itself is covered under the WCA, and not on whether compensation is or is not barred by some other feature of the statute.[14] *See also Perez v. Blumenthal Bros. Chocolate Co.,* 428 Pa. 225, 227–28, 237 A.2d 227, 229 (1968) (permitting a common law trespass action to proceed because the plaintiff's illness fell outside the scope of defined occupational diseases under the ODA); *cf. Martin v. Lancaster Battery Co.,* 530 Pa. 11, 17, 606 A.2d 444, 447 (1992) (allowing

77 P.S. § 71(a). That situation is materially different from discerning legislative policy in enacting a statute of repose.

13. I am not convinced by the majority's attempt to distinguish *Moffett* on the grounds that it was decided at a time when participation in the workers' compensation system was elective. *See* Majority Opinion, at 79, 81 A.3d at 863. The central point made in *Moffett* was that, as a matter of statutory interpretation in light of the history of Pennsylvania's workers' compensation legislation, once the Legislature decided to bring a certain occupational disease within the scope of the act's coverage, the statutory remedies were intended to be exclusive even where the act made compensation unavailable under the circumstances. *See Moffett,* 339 Pa. at 116, 14 A.2d at 113 (recognizing that there are various types of limitations on compensability under the WCA, but that none of them have been construed as permitting a common-law remedy so long as the WCA covers injuries stemming from the disease in question). Although potential constitutional difficulties are perhaps more pronounced in a non-elective scheme, it would be a misreading of *Moffett* to suggest that the holding in that matter rested on the availability of an opt-out provision for employees.

14. This understanding is confirmed because that portion of the opinion relies on *Boniecke v. McGraw–Edison Co.,* 485 Pa. 163, 401 A.2d 345 (1979), where this Court stated, centrally, that claims may be asserted in the common pleas court only if they are based on "diseases not covered by" the WCA and ODA, *id.* at 167, 401 A.2d at 346, and thus, the crucial issue was whether the plaintiff's illnesses were defined as occupational diseases by those statutes. *See generally Sedlacek v. A.O. Smith Corp.,* 990 A.2d 801, 807–08 (Pa.Super.) (observing that this Court has sometimes been imprecise in its terminology by using terms such as coverage, cognizability, recovery, and relief interchangeably), *alloc. denied,* 607 Pa. 706, 4 A.3d 1055 (2010).

a suit for fraudulent misrepresentation where the employee was "not seeking compensation for the work-related injury itself"); *Urban v. Dollar Bank*, 725 A.2d 815, 820 (Pa.Super.1999) (permitting a defamation suit against the plaintiff's employer upon finding that harm to reputation is not a covered injury under the act). Finally, the *Stratemeyer* case from Montana is to the same effect: because "mental-mental" injuries were categorically excluded from coverage under that state's workers' compensation act, an action at law could be maintained. *See Stratemeyer*, 915 P.2d at 180.

Thus, there is a qualitative difference between coverage and compensability under the WCA. *Accord Hartwell*, 320 F.Supp. at 77; *cf. Weldon v. Celotex Corp.*, 695 F.2d 67, 72 (3d Cir.1982) (distinguishing coverage from compensability in interpreting the similar manifestation period under the ODA).[15] I would therefore reject Plaintiffs' contention that compensability is the sole appropriate litmus for ascertaining whether the act's remedial provisions are "exclusive and in place of any and all other" avenues of relief. 77 P.S. § 481(a). In my analysis, Section 301(c)(2) is limited to specifying that compensation is unavailable for diseases manifesting beyond the 300–week time window; hence, it functions only as a temporal limitation on the availability of compensation as part of the overall legislative scheme, and not as a means to exclude from "coverage" under the act all diseases enumerated in Section 108 that manifest in a delayed timeframe. It functions, in other words, as a statute of repose in that it obviates potential liability after a defined amount of time has elapsed. *See Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 649 n. 10, 981 A.2d 198, 212 n. 10 (2009) (in *dicta*, describing Section 301(c)(2) as a statute of repose); 8 DAVID B. TORREY & ANDREW E. GREENBERG, PENNSYLVANIA WORKERS' COMPENSATION LAW &

---

**15.** The Third Circuit explained its reasoning as follows:

> Since it is *coverage* that takes away employees' rights under the common law, the employer's immunity from tort liability continues even though the limitations period in the [ODA] bars *compensation* for the employee.... Although that result is harsh, arbitrariness is a necessary result of any period of limitations, and no system of compensation yet devised avoids all inequities.

*Celotex*, 695 F.2d at 72 (emphasis added).

PRACTICE § 14.10 (3d ed. 2011) (expressing that Section 301(c)(2)'s time limitation constitutes a "substantive prerequisite to ascertainment of the compensability," intended to "establish, via arbitrary time basis, some outside limit to govern the potential liability of the employer"). Accordingly, I would hold that the 300–week limitation in Section 301(c)(2) has no effect on whether a worker's occupational disease comes within the WCA's coverage. As such, the exclusivity mandate appearing in Section 303(a) of the statute applies, in my view, to preclude Plaintiffs from maintaining a negligence-based lawsuit against Employers.[16]

As I would conclude that the Workers' Compensation Act provides the exclusive remedy for Plaintiffs' injuries although compensation is unavailable, I would find that the constitutional issues raised by Plaintiffs are salient. These issues pertain to whether the time-based limitation under review violates the Reasonable Compensation Clause of Article III, Section 18 of the Pennsylvania Constitution, the Remedies Clause contained in Article I, Section 11 of the state charter, or the federal Equal Protection Clause or Due Process Clause. Plaintiffs have provided substantive advocacy on these constitutional questions, to which Employers have responded on the merits.

Employers additionally state that Plaintiffs did not give notice to the Pennsylvania Attorney General of their challenge to the constitutionality of the WCA in the common pleas court in compliance with civil procedural rule 235. They also allege that Plaintiffs failed to provide the Attorney General with

16. I pause to emphasize that I am not without sympathy for workers who suffer from diseases that manifest beyond the time period permitted for compensation under Section 301(c)(2), and am cognizant of the harshness of the result that would ensue in such cases under my present interpretation. However, I am constrained by what I believe to be the legislative policy and intent underlying the time limitation, and as such, I would affirm the Superior Court's expression that, absent constitutional infirmity, "removal or fine-tuning of the statute of repose is for the legislature, not for the courts." *Ranalli v. Rohm & Haas Co.*, 983 A.2d 732, 735 (Pa.Super.2009). Additionally, I would observe that, in some cases at least, the injured worker will have recourse against other parties besides the employer. *See, e.g.*, Supplemental Reproduced Record of Oglebay (reflecting that the Tooey plaintiffs have reached settlements with several defendant corporations).

similar notification at the appellate level and a copy of their appellate briefs as required by our appellate rules. *See* Pa.R.A.P. 521(a). They indicate that, where a party fails to notify the Attorney General that the constitutionality of a statute is being attacked, the issue is deemed waived. *See Kepple v. Fairman Drilling Co.,* 532 Pa. 304, 313, 615 A.2d 1298, 1303 (1992).

In reply, Plaintiffs maintain that they "did indeed serve notice of their challenge to the constitutionality of the Workers' Compensation Act," and reference portions of the common pleas docket sheets reflecting that "Plaintiffs have served their Challenge to the Constitutionality of the Workers' Compensation Act." Appellants' Reply Brief at 10 (citing R.R. 12a (Tooey), 107a–108a (Landis)).[17] In the alternative, Plaintiffs proffer that notice to the Attorney General is unnecessary because the constitutionality of the WCA is being "vigorously defended" by powerful corporations. Appellants' Reply Brief at 12. Finally, Plaintiffs advocate that notice to the Attorney General is not required because their constitutional challenges are as-applied, rather than facial. They argue that this distinction is sensible because successful facial challenges invalidate the statute entirely, whereas successful as-applied challenges only prevent application of the statute under the factual circumstances before the court. *See id.* at 11.

The Pennsylvania Attorney General is the Commonwealth official statutorily charged with defending the constitutionality

17. This aspect of Plaintiffs' representation appears somewhat evasive, as Plaintiffs do not state that they served notice on the Attorney General. Plaintiffs also attach to their reply brief two documents purporting to be such notices at the common pleas level, one for the Tooey plaintiffs and the other for the Landis plaintiffs. Each contains a single sentence, stating: "Notice is hereby given that on May 13, 2008, the Plaintiffs have served their Challenge to the Constitutionality of the Workers['] Compensation Act." The documents do not specify who received service of the challenge. The common pleas docket entries are similar.

In denying an allegation with waiver implications predicated on an alleged lack of notice *to the Attorney General,* an express indication concerning who received the notices in question seems indispensable. That Plaintiffs fail to give this Court any such indication makes their presentation appear less than forthright.

of all enactments passed by the Pennsylvania General Assembly. *See City of Phila. v. Commonwealth,* 575 Pa. 542, 570, 838 A.2d 566, 583 (2003) (citing 71 P.S. § 732–204(a)(3) ("It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes. . . .")). As such, when a constitutional attack upon an act of the Assembly is lodged, "the Attorney General stands in a representative capacity for, at a minimum, all non-Commonwealth parties having an interest in seeing the statute upheld." *Id.* at 570–71, 838 A.2d at 584. Moreover, the Attorney General may wish to seek further review on behalf of the Commonwealth of an adverse decision on the constitutional question. *See* Pa. R.A.P. 521(b) & Note. Therefore, where (as here) the Commonwealth is not a party to the proceedings, the party challenging the validity of a statute is required,

> upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of Pennsylvania of the existence of the question; together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice.

Pa.R.A.P. 521(a). *See generally Md. Cas. Co. v. Odyssey Contracting Corp.,* 894 A.2d 750, 755–56 (Pa.Super.2006) (recognizing that the Rule 521(a) notification requirement is separate from, and in addition to, the counterpart requirement under civil procedural rule 235).

Under prevailing precedent, a threshold question is whether Plaintiffs allege a facial, or as-applied, challenge to the constitutionality of the provision under review. This is because, as Plaintiffs observe, *Kepple* indicated that an as-applied challenge does not implicate civil rule 235 or appellate rule 521(a). *See Kepple,* 532 Pa. at 313 n. 3, 615 A.2d at 1303 n. 3. However, the policy rationale underlying Rule 521 is implicated where a meritorious as-applied challenge would invalidate a statute as to an entire class of parties who are not before the Court. Indeed, the term "as applied" is susceptible of different meanings and, moreover, a reviewing court may declare a statute facially unconstitutional when adjudicating an as-ap-

plied challenge. Thus, I would find *Kepple's* simple dichotomy (for which the Court cited no authority) insufficient to provide meaningful guidance as to whether the Attorney General must be given an opportunity to participate.[18] As such, excepting from the scope of Rule 521(a) all challenges that can, in some sense, be labeled "as applied"—an exception that, in any event, does not appear in the Rule's text—may leave the Attorney General without notice in some instances where she should be given an opportunity to participate.

These appeals present such a case. Plaintiffs are seeking to maintain an action at law, and they propose that the exclusive-remedy command of Section 303(a) may not constitutionally be applied to them. Their challenge, in that limited sense, is as-applied. However, Plaintiffs' argument focuses on whether Section 303(a)'s exclusivity clause can constitutionally be enforced in conjunction with Section 301(c)(2) under any circumstances, not just their own. *See* Plaintiffs' Reply Brief at 12. Indeed, Plaintiffs do not purport to rely on any facet of their circumstances that would differentiate them from any other worker whose occupational disease occurs beyond the 300–week period, nor do they assert that such proviso, in conjunction with remedy exclusivity, can potentially be applied to other workers under different circumstances. *See generally Citizens United v. FEC,* 558 U.S. 310, 331, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010) (discounting any "as-applied" label since the constitutional claims at issue would, if meritorious, invalidate the challenged statute as to all corporations); *id.* at 375–76, 130 S.Ct. 876, 919 (Roberts, C.J., concurring). Thus,

18. *See, e.g., Sonnier v. Crain,* 613 F.3d 436, 458 (5th Cir.2010) (Dennis, J., dissenting) ("[F]acial and as-applied challenges are not categorically different types of cases to which different rules of decision apply[; o]n the contrary, in order to adjudicate constitutional challenges, courts apply whatever constitutional doctrines and tests are relevant to the substance of each particular case, and the results of that analysis determine whether a challenged law is unconstitutional, either on its face or as applied to a particular situation."), *majority op. withdrawn in part on reh'g,* 634 F.3d 778 (5th Cir.2011); Richard H. Fallon, Jr., *As–Applied and Facial Challenges and Third–Party Standing,* 113 Harv. L. Rev. 1321, 1336 (2000) (indicating that it is misleading to suggest that there is a sharp, categorical distinction between facial and as-applied adjudications).

while the challenge here may nominally be as-applied, it has many of the incidents of a facial challenge. *See Richmond Med. Ctr. For Women v. Herring,* 570 F.3d 165, 172 (4th Cir.2009) (noting that facial challenges allow courts to "efficiently address [the] constitutional concerns of a large group without engaging in the long and unwieldy process of case-by-case analyses"). Under these circumstances, where the constitutional validity of enforcing an act of the General Assembly vis-à-vis a large class of potential litigants is being challenged, I would conclude that the Attorney General should be given an opportunity to participate in conformance with Rule 521(a).[19]

Here, Plaintiffs do not specifically allege that they provided notice to the Attorney General. *See supra* note 17. Further, the docket sheets from this Court and the Superior Court do not contain entries to that effect, nor is there any indication in the record of an appellate-level notification. Finally, as Plaintiffs have not sought to augment the record with such proof, there is no basis to believe that Plaintiffs satisfied their obligations under Rule 521(a).

Regarding issue preservation, it is true, as Employers contend, that *Kepple* reflects a holding of this Court that failure to notify the Attorney General as required ordinarily results in waiver. *See Kepple,* 532 Pa. at 313, 615 A.2d at 1303; *see also In re Adoption of Christopher P.,* 480 Pa. 79, 90, 389 A.2d 94, 100 (1978) (finding constitutional issues waived where the challenger failed to notify the Attorney General and also failed to raise the issues in the orphan's court). However, I would find it unduly harsh to dismiss Appellant's constitutional claims as waived in the present context. Plaintiffs were entitled to rely on *Kepple's* statement that waiver is only

19. It may be true, as Plaintiffs suggest, that various parties involved in this litigation are interested in seeing the statute upheld. Still, I disagree with Plaintiffs' suggestion that this Court's waiver analysis should consider whether those parties are powerful corporations who defend the enactment vigorously. Such considerations would require the Court to inquire into the financial strength of the parties before it and make an assessment as to whether their advocacy was sufficiently forceful that the Attorney General's input would be superfluous—a standard that would be unworkable in practice.

triggered for facial challenges and, in a limited sense at least (as explained above), the present challenge may be termed as-applied. Thus, I would not dismiss such claims as waived. At the same time, I would not overlook the requirements of our appellate rules.

For the reasons given above, I would hold that Plaintiffs' injuries are covered by the Workers' Compensation Act, but that compensation is unavailable. Additionally, I would retain jurisdiction and direct that Plaintiffs give immediate written notice to the Attorney General concerning the constitutional issues raised by such a holding, in conformance with appellate rule 521(a). Accordingly, I respectfully dissent from the majority's decision to reverse the Superior Court's order and remand to the common pleas court for further proceedings.