**Thomas TLOCZYNSKI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JOHN F. MILES, CO., INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 2000.

Decided Jan. 18, 2001.

William C. Cole, Kulpmont, for petitioner.

Robert A. Gallagher and Darryl R. Wishard, Williamsport, for respondent.

Before SMITH, Judge, KELLEY, Judge and RODGERS, Senior Judge.

SMITH, Judge.

Thomas Tloczynski (Petitioner) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) that granted the

---

modification/review petition filed by John F. Miles Co., Inc. (Employer) and denied the petition for penalties that Petitioner filed. Petitioner questions whether his claim is limited to a specific loss of the right index finger, whether he suffered an injury separate and apart from the specific loss that is compensable under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626, and whether the healing period extends beyond the payments made by Employer.

## I

Petitioner, a construction laborer, sustained damage to his right index finger while moving heavy equipment on stairs, which required amputation of the tip of the finger. By a notice of compensation payable dated August 28, 1995, Employer acknowledged an injury to Petitioner on July 28, 1995 described as "right index finger." Petitioner developed a growth protruding from the incisional scar of the amputated finger. Carlos Villareal, M.D., began treating Petitioner on June 10, 1996; he excised the protrusion. A biopsy determined that it was partially fingernail and partially scar tissue. Dr. Villareal performed another surgery on the tip of the finger under local anesthesia on July 22, 1996.

Employer filed its modification/review petition on October 18, 1995. It asserted that Petitioner's injury had resolved into a specific loss of one-half of his right index finger as of September 9, 1995 that would entitle him to twenty-five weeks of compensation and a healing period of six weeks for a total of thirty-one weeks. Employer stopped paying benefits near the end of August 1996, at the end of the healing period plus the fifty weeks for loss of the full index finger provided in Section 306(c)(10) of the Act, 77 P.S. § 513(10). Petitioner filed a penalty petition on November 7, 1996, seeking penalties for Employer's unilateral cessation of payment of benefits. On January 29, 1997, Dr. Villareal operated to remove more of the bone of Petitioner's finger, and he excised a cyst extending into the bone that was found during that procedure. Dr. Villareal testified that Petitioner experiences a form of pain called causalgia, which is not unusual for amputee patients.

Employer presented the September 30, 1996 deposition of Michael H.O. Dawson, M.D., who first treated Petitioner on January 23, 1996. Dr. Dawson described causalgia as phantom limb pain and testified that generally speaking Petitioner's complaints following his surgery are typical of such an amputation and that they could not be characterized as separate, apart and distinct from that which normally follows amputation. Dr. Dawson stated that to facilitate a proper recovery, the finger needed to be shortened by about another centimeter to the neck of the middle phalanx.

The WCJ stated that in its brief and in its proposed conclusions of law Employer had admitted liability for a specific loss of the full right index finger and noted that Employer had acknowledged Petitioner's entitlement to fifty weeks of payments for loss of the right index finger. The issue in the modification/review petition, according to the WCJ, was whether there was an injury separate and apart from the acknowledged injury. Citing *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Cmwlth. 612, 587 A.2d 49 (1991), the WCJ noted that generally the determination of a specific loss precludes payment of wage-loss benefits in addition to the fixed entitlement set forth in Section 306(c) of the Act, 77 P.S. § 513; however, there is an exception under which a claimant will qualify for total disability payments if he or she shows a destruction, derangement or deficiency to a separate and distinct part of the body that did not follow as a normal result of the specific loss.[1]

---

1. Section 306(d) of the Act, 77 P.S. § 513,     provides:

The WCJ concluded that Employer had met its burden and granted the modification/review petition and amended the NCP to describe Petitioner's injury as a specific loss of the right index finger, rather than the loss of one-half of the index finger. Further, Employer had met its burden of proving that Petitioner did not sustain a destruction, derangement or deficiency of some other part of the body separate and distinct from the right index finger. Although Employer violated the Act by ceasing payments unilaterally at the end of the period of fifty-six weeks (six-week healing period plus fifty weeks for specific loss) because no wage-loss benefits were due for the period subsequent to the cessation of benefits, the WCJ determined that there was no amount awarded with respect to which penalties could be imposed.

On Petitioner's appeal the Board reviewed the testimony and noted the authority of the WCJ to accept or reject the testimony of any witness, in whole or in part, citing *Tatano v. Workers' Compensation Appeal Board (Copyworld of Pittsburgh)*, 698 A.2d 123 (Pa.Cmwlth.1997). The Board concluded that substantial evidence supported the WCJ's findings, that the WCJ properly determined that Petitioner had not suffered an injury beyond the specific loss of the right index finger and that Petitioner was not entitled to disability benefits in addition to specific loss benefits.[2]

> Where, at the time of the injury the employe receives other injuries, separate from those which result in permanent injuries enumerated in clause (c) of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in clause (c) of this section for the specific healing period. In the event the employe suffers two or more permanent injuries of the above enumerated classes compensable under clause (c) of this section, he shall be compensated for the largest single healing period rather than the aggregate of the healing periods.

## II

Petitioner first quotes from the report of Dr. Mohammed Aslam describing Petitioner's post-traumatic causalgia and the testimony of Dr. Villareal concerning the ongoing problems that Petitioner experienced and Dr. Villareal's agreement that the cyst discovered in the January 1997 operation was a situation separate and apart from that which would normally follow from an amputation of the distal phalanx of the right index finger. Further, he states that he had three significant surgeries on his hand, which resulted in additional healing periods. Petitioner notes that Section 306(d) of the Act, 77 P.S. § 513, provides that if there are several specific losses under Section 306(c), the longest healing period is paid, but no healing period is paid if a claimant receives payment for total disability separate and apart from a Section 306(c) specific loss. Petitioner then asserts that there would be a "healing period" equal to the time of closure of the wound that would extend his compensation payments into mid–1997.[3]

Additionally, Petitioner maintains that he suffered a separate injury in the form of causalgia and also the ulcerated area of the finger that had to be excised in the last operation. In comparison he notes that a painful neuroma can be the reason for a specific loss based upon loss of use, citing *Reading Tube Corp. v. Workmen's Com-*

2. The Court's review of the Board's order is limited to determining whether the necessary findings of fact were supported by substantial evidence and whether there was an error of law or a constitutional violation. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

3. Section 306(c) also provides: "Where any such permanent injury or injuries shall require an amputation at any time after the end of the healing period hereinbefore provided, the employe shall be entitled to receive compensation for the second healing period...."

*pensation Appeal Board,* 12 Pa.Cmwlth. 45, 315 A.2d 678 (1974). He notes that a painful neuroma has also been found to be an injury separate and apart from a specific loss. *Rowan v. Workmen's Compensation Appeal Board,* 58 Pa.Cmwlth. 56, 426 A.2d 1304 (1981); *Truck Lubricating & Washing Co. v. Workmen's Compensation Appeal Board,* 54 Pa.Cmwlth. 495, 421 A.2d 1251 (1980).

Employer argues that it paid benefits during a six-week healing period. It then sought but did not receive Petitioner's agreement that he was entitled to twenty-five weeks for the loss of one-half of the right index finger. Thereafter Employer filed its modification/review petition. Employer contends that once the bone was shortened further in January 1997, Petitioner became entitled to compensation for a specific loss of the entire right index finger under Section 306(c)(10). Employer states that Petitioner had three surgical procedures, but because he had two specific losses generated out of the same work injury of July 28, 1995, he was properly compensated only "for the largest single healing period rather than the aggregate of the healing periods" under Section 306(d).

The Court observes that in *Truck Lubricating & Washing Co.* the medical evidence was that following amputation of his finger a claimant suffered extreme and disabling neuroma pain from a tumor in the nerve, which was very rare, being suffered by one percent of the physician's several hundred yearly patients. The Court concluded that the evidence supported the determination that the claimant suffered a derangement, destruction and deficiency of another part of his body that did not follow as the normal result of the amputation. In *Rowan* the Court determined that the medical evidence established that the claimant's painful and disabling neuromas were separate and distinct from the specific loss injuries and did not normally result from the permanent injury. In the present case, the medical evidence supported the WCJ's determination that any causalgia Petitioner may have experienced would not have been separate and distinct from the normal effects of the amputation. Moreover, Petitioner did not provide evidence similar to that in *Truck Lubricating & Washing Co.* and *Rowan* that the cyst that was ultimately excised was something extremely rare or otherwise separate and distinct from effects that normally follow the amputation.

On one point, however, Petitioner is partially correct. The Section 306(d) provision that if an employee suffers two or more permanent injuries of the type specified in Section 306(c), he or she shall be compensated for the largest single healing period rather than the aggregate, *see* n1 above, plainly provides for multiple injuries that occur at the same time, so that the healing periods run simultaneously. As noted above, Section 306(c) expressly provides for the situation here, namely, a successive amputation to the part of the body after the running of some or all of the initial healing period, and it expressly grants benefits during a second healing period.

In *Cywinski v. Workmen's Compensation Appeal Board (Acme Markets, Inc.),* 687 A.2d 1174 (Pa.Cmwlth.1996), a claimant suffered the amputation of the first digital phalanx of his left index finger after a crush injury. After the initial healing, a fingernail began to grow from the tip, causing increasing pain, and a second operation was performed, which was described as a "neuroma and nail remnant excision." *Id.* at 1175. The Court noted that "amputation" is not defined in the Act, although the WCJ had taken notice of the definition as "the removal of a limb or other appendage or outgrowth of the body." *Id.* (quoting Dorland's Illustrated Medical Dictionary 81 (17th ed.1988)). Although agreeing that amputation did not necessarily involve bone removal, the Court stated that not every removal of something attached to one's body was an

amputation. The Court concluded that the second procedure did not constitute a second amputation for purposes of Section 306(c) authorization of payment for a second healing period.

Applying *Cywinski* to this case, it is clear that neither the excision that Dr. Villareal performed in June 1996 nor the limited procedure performed in July 1996 constituted a second amputation. The Court concludes, however, that the January 1997 removal of a further significant length of bone from Petitioner's finger did constitute a second amputation for which Petitioner was entitled to a second healing period. Consequently, the Board's order is reversed to that extent. The case is remanded to the Board for remand to the WCJ for the entry of an order requiring Employer to pay appropriate healing period benefits for the second amputation performed on Petitioner's finger. Because Petitioner was entitled to further compensation, the WCJ shall reconsider the previous determination of Petitioner's penalty petition. The Board's order is otherwise affirmed.

### ORDER

AND NOW, this 18th day of January, 2001, the order of the Workers' Compensation Appeal Board is reversed to the extent that the Board failed to provide for a second healing period following the second work-related amputation that Thomas Tloczynski underwent. This matter is remanded to the Board for remand to the Workers' Compensation Judge for the entry of an appropriate order and for reconsideration of the issue of penalties. In all other respects the order of the Board is affirmed.

Jurisdiction is relinquished.

Senior Judge RODGERS dissents.