IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elmer Riehl,                :
                Petitioner    :
                                 :
       v.                   :
                                 :
Beiler Brothers, LLC (Workers'    :
Compensation Appeal Board),     :   No. 1563 C.D. 2023
              Respondent   :   Argued: September 11, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON               FILED: November 18, 2024

The widow of Elmer Riehl (Claimant's widow) petitions for review from the December 1, 2023, order of the Workers' Compensation Appeal Board (Board), which denied as moot Claimant's petition to convert his benefits from total disability (TTD) to specific loss after a prior remand by the Board to the workers' compensation judge (WCJ) for hearings, evidence, and findings of fact. Upon review, we vacate and remand to the Board for further proceedings in accordance with this opinion.

## I. Factual & Procedural Background

Claimant sustained a disabling work-related injury in October 2011. Certified Record (C.R.) at 24. Beiler Brothers, LLC (Employer) accepted the injury

via a Notice of Compensation Payable and began paying TTD to Claimant. *Id*. The injury was ultimately described as incomplete tetraplegia with depression and anxiety resulting from the October 2011 incident. *Id*. In June 2020, Claimant filed a petition to convert his TTD to specific loss benefits, which are available when a claimant permanently loses the use of a body part. *Id*. In November 2020, the WCJ dismissed the petition without prejudice to be refiled in the Board's original jurisdiction, which Claimant did later that month. *Id*. at 69; *see* Section 306(c)(23) of the Workers' Compensation Act (Act),[1] 77 P.S. § 513(23) (stating that "[u]nless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability"). In August 2021, the Board referred the matter to the WCJ to produce findings of fact; the matter would then return to the Board, which retained jurisdiction. *Id*. at 425.

The WCJ held hearings and accepted evidence, including Claimant's previously recorded deposition testimony, Claimant's widow's hearing testimony, which included that at the time of Claimant's death, he had no income other than his TTD and Social Security disability benefits, and depositions from doctors for both sides. Unfortunately, during that phase of the litigation, Claimant passed away in November 2021 from sepsis resulting from bedsores that developed from his work-related tetraplegia. C.R. at 25. Claimant's widow continued the litigation as his surviving spouse and estate executrix. *Id*. Claimant's doctor testified that Claimant's mental health conditions were not physically correlated to his injuries, but are a recognized secondary result of living with a disability. *Id*. at 240-41. Both doctors opined that Claimant's death was due to his work-related injuries. *Id*. at 29 & 31.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(23).

In proposed conclusions of law for the Board, the WCJ stated in a July 26, 2022, opinion that Claimant had met his burden of proof for specific loss benefits based on his permanent loss of use of both arms and both legs, although the WCJ did not specifically propose an amount of benefit weeks due to Claimant. C.R. at 34. The WCJ also stated that Claimant's mental health conditions constituted a disability separate and apart from his work-related physical injuries, so he was entitled to TTD followed by specific loss benefits, against which Employer could not claim a credit for past-paid TTD. *Id*. at 32 & 34. The WCJ also opined that Claimant's death was due to his work injuries. *Id*. at 35.

Because the Board's August 2021 referral to the WCJ for factfinding predated Claimant's death, the Board had not included any instructions in that regard. *See id*. at 425. However, the WCJ accepted legal arguments from both sides concerning whether Section 306(g) of the Act precluded Claimant's widow from receiving his posthumous specific loss benefits because his death was due to his work injuries. *Id*. at 32-34; *see* 77 P.S. § 541 (stating that "[s]hould the employe die from some other cause than the injury, payments of compensation to which the deceased would have been entitled to under [the specific loss provision of the Act] shall be paid to" surviving dependents).

In the proposed conclusions of law, the WCJ stated that in accordance with the plain language of Section 306(g), Claimant's death from his work injuries barred his widow's entitlement to his specific loss benefits. C.R. at 35. Claimant's widow had argued for an equitable solution because 301(c)(1) of the Act, 77 P.S. § 411(1), precludes fatal claim survivor benefits if a claimant's death from work

3

injuries occurs more than 300 weeks after the injury, as was the case here.[2] *Id*. at 33. The WCJ expressed sympathy for Claimant's widow, who by operation of the Act would receive nothing in this case but stated that he was constrained to follow the law as written. *Id*. at 34. Although the matter automatically returned to the Board, Claimant's widow filed a protective appeal on the legal issue of her eligibility for some form of survivor benefits in this matter. *Id*. at 38.

Adopting the WCJ's findings of fact, the Board stated that if Claimant had not died while his petition was being litigated, it would "likely" have awarded conversion of his TTD to 1,640 weeks of specific loss benefits. C.R. at 70-71 & 77. The Board explained that this was due to Claimant's loss of use of both arms and legs (each having a value of 410 weeks pursuant to Section 306(c) of the Act, 77 P.S. § 513) and having shown that it was financially advantageous for himself and his family.[3] *Id*. at 77 (citing *Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1069-70 (Pa. Cmwlth. 2015)).

However, the Board concluded that Claimant's petition became moot when he passed away because his death was due to his work injuries and Section 306(g) of the Act bars specific loss benefits for a surviving dependent in that circumstance. C.R. at 78. The Board acknowledged that Claimant's widow might be left without a remedy because fatal claim benefits, which are available to a surviving dependent when the claimant's death is due to the work injury, are not available if the death occurs more than 300 weeks after the injury. *Id*. at 80 (citing

---

[2] Claimant's injury occurred on October 6, 2011. Three hundred weeks from that date elapsed on July 6, 2017. Claimant's November 7, 2021, work-related death clearly exceeded the statutory limit for his widow to seek fatal claim benefits.

[3] The Board first acknowledged the protective nature of Claimant's widow's appeal and denied Employer's motion to quash on the basis that the WCJ's determination was not final. C.R. at 74.

4

Section 301(c)(1) of the Act). Like the WCJ, the Board expressed sympathy but was constrained to follow the plain language of the Act. *Id.* at 80-81. Claimant's widow timely appealed to this Court.[4]

## II. Issues & Arguments

Claimant's widow points out that the intended interplay of Section 306(g), which makes specific loss benefits heritable when the claimant dies of a non-work-related cause, and Section 307, which allows fatal claim benefits for surviving dependents when the claimant dies of their work injury, is to avoid double recovery of benefits. Claimant's Widow's Br. at 12. However, Claimant's death occurred more than 300 weeks after the work injury and pursuant to Section 301(c)(1), his widow, a surviving dependent will receive nothing. *Id.* at 13. Claimant's widow avers that this is a harsh and unjust result that the General Assembly could not have intended. *Id.*

Claimant's widow asserts that Section 410 of the Act, 77 P.S. § 751, should apply here to allow her to receive Claimant's specific loss benefits regardless of the cause of his death. Claimant's Widow's Br. at 14-16. This is because Claimant's petition to convert his benefits from TTD to specific loss was in litigation at the time of his death and was ultimately found meritorious by the Board. *Id.* Last, Claimant's widow asserts that in the alternative, this Court should interpret Section

---

[4] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether [B]oard procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019). When an "appeal requires [this Court] to interpret statutory provisions[,] . . . it presents a pure question of law over which our standard of review is *de novo* and our scope of review is plenary." *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018) (italics added).

301(c)(1) to mean that even though Claimant's death was medically due to his work injury, it was not legally due to his work injury because it occurred after 300 weeks had elapsed from the incident. *Id*. at 16-18 (citing *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013)). Accordingly, because Claimant's death was not legally due to his work injury, his widow should receive his specific loss benefits. *Id*.

Employer responds that the Act's plain language in Section 306(g) limits the heritability of specific loss benefits to where the claimant's death is not from work-related causes and that this principle has been upheld in multiple cases. Employer's Br. at 10-14. Employer asserts that Claimant's widow's Section 410 arguments are waived because they were not presented to the Board. *Id*. at 14. Employer also argues that Section 410 does not apply because it is a general provision in conflict with Section 306(g), which specifically states that if a claimant's death is due to the work injury, specific loss benefits will not be heritable to surviving dependents. *Id*. at 15-16. Lastly, Employer avers that Section 301(c)(1) cannot be manipulated to mean that a claimant's death that is undisputedly due to his work injury is not "legally" due to his work injury if it occurs more than 300 weeks after the incident. *Id*. at 17-19.

### III. Discussion
### A. Waiver

We first address Employer's argument that Claimant failed to raise Section 410 as a basis for relief before the Board in its original jurisdiction and, accordingly, waived the claim on appeal to this Court. Claimant's widow's argument to the Board was based on equitable considerations and the position that because Claimant's death occurred more than 300 weeks after the work incident that

6

caused his injuries, it should be considered a non-work-related death as a matter of law even though there was no medical dispute that his death was due to his work injuries. C.R. at 78-81. In that construct, according to Claimant's widow, deeming Claimant's death not work-related would render his specific loss benefits heritable to her. *Id*. at 78-80.

Claimant's widow did not pursue Section 410 as a means of recovering Claimant's specific loss benefits when this matter was before the Board in its original jurisdiction, although she did raise Section 410 in her petition for review to this Court. Petition for Review at 4. In many instances, this would be a clear basis to find waiver, as Employer argues here. *See Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 913-14 (Pa. 2002). However, our courts have held that as a general rule, when statutory provisions are mandatory, they cannot be waived. *St. Elmo Development, LLC v. Zoning Hearing Bd. of the City of Allentown*, 320 A.3d 783, 788 (Pa. Cmwlth. 2024) (citing *Dowhower v. Workers' Comp. Appeal Bd. (Capco Contracting)*, 919 A.2d 913, 918 (Pa. 2007)). In this regard, "the use of 'shall' in a statute is not always indicative of a mandatory directive; in some instances, it is to be interpreted as merely directory." *Id*. (quoting *In re Canvass of Absentee & Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1071 (Pa. 2020)). "The true test [to determine] whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required." *Id*. (brackets in original). In greater depth, this Court has explained:

> Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other. If the thing directed to be done is the essence of the thing required, the statute is mandatory. If, however, the statute merely

7

directs that certain proceedings be done in a certain manner or at a certain time, it is directory.

*Id*. (citations omitted).

Section 410 states in relevant part: "In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death *shall* be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751 (emphasis added). This is not a purely procedural provision, like one that requires a certain time period or format for a particular filing. It is, as the above quote states, a provision where "the thing to be done is the essence of the thing required": if a claimant dies while his or her claim is pending, the amount of compensation due to the claimant shall be paid to surviving dependents or the estate. A claim in this context is a request via petition for compensation of some sort, and if that compensation is deemed appropriate, the claimant's surviving dependent or estate need not also file an additional petition requesting that it be paid to them. The final adjudication of the claim, if resolved in the claimant's favor, must be paid by the employer to the appropriate recipient. This was clearly the legislature's goal in enacting this provision. Section 435 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 991, even provides for penalties if an employer does not pay benefits or compensation due to the claimant or their surviving dependents or estate.

Because the requirement that an employer pay surviving dependents or an estate the compensation due to a claimant who dies while a claim is pending is automatic, the operation of Section 410 is mandatory. If its requirements are met, its application in a given matter is not waivable. As such, Claimant's failure to raise Section 410 before the Board in this matter does not mean that this Court may not consider its application as a matter of law. Moreover, there is no factual dispute here

8

and both sides had the opportunity to brief and argue the applicability of Section 410 to this case. Accordingly, there was no waiver.

## B. Merits

Under Section 306(a)(1) of the Act, a claimant may receive TTD after a work-related injury when the claimant is totally disabled and has no earning power. 77 P.S. § 511(1); *Steets v. Celebration Fireworks, Inc. (Workers' Comp. Appeal Bd.)*, 295 A.3d 312, 316 (Pa. Cmwlth. 2023), *appeal granted*, 311 A.3d 1005 (Pa. 2024). Section 306(c)(1)-(25) of the Act enables specific loss benefits to claimants who suffer the permanent loss of use of a body part. 77 P.S. § 513(1)-(25). Specific loss benefits are payable without regard to whether the permanent injury has actually caused a wage loss and are based on a schedule enumerated in Section 306(c), ranging from 16 weeks for the loss of a non-great toe to 410 weeks for the loss of either an arm or a leg. *Steets*, 295 A.3d at 316.

If a claimant sustains both disabling injuries and specific loss injuries, pursuant to Section 306(d) of the Act, 77 P.S. § 513, he or she may be eligible for benefits for both if the disabling injuries are separate and apart from the specific loss injuries. *Steets*, 295 A.3d at 317. The claimant cannot receive both at the same time, but may do so in succession, with the TTD usually first and the specific loss benefits following upon the "end" of TTD, which may be awarded through the claimant's death. *Id*. Claimants may also petition to convert TTD to specific loss benefits, in which case the claimant must show that the conversion to specific loss benefits, which unlike TTD have a set ending point once the allotted weeks elapse, is "more financially advantageous" for the claimant than ongoing TTD. *Arnold*, 110 A.3d at 1069-70.

When a claimant dies while receiving TTD, the Act provides two modes by which benefits may be available to surviving dependents, such as a widow or children; the determining factor is the cause of the claimant's death. If the claimant dies from his or her work injuries, surviving dependents may file a petition for fatal claim benefits, which are distinct from TTD and available to the surviving dependents as an independent right pursuant to Section 307(1)-(6) of the Act, 77 P.S. § 561(1)-(6). *Steets*, 295 A.3d at 317. Relevant to this appeal, Section 301(c)(1) of the Act states that for fatal claim benefits to be available to a surviving dependent, the claimant's death from the work injury must occur within 300 weeks, or about 5 and 3/4 years, from the date of the injury. 77 P.S. § 411(1). This limitation "was intended to prevent speculation as to whether a work-related injury was the cause of death years after the injury had occurred." *Antonucci v. Workmen's Comp. Appeal Bd. (U.S. Steel Corp.)*, 576 A.2d 401, 406 (Pa. Cmwlth. 1990) (discussing another case where a widow sought death benefits on the basis that her husband's fatal heart attack was causally connected to a work-related heart attack that occurred 23 years earlier). In the fatal claim context, the employer is responsible for reasonable funeral expenses up to $7,000, whether or not there are surviving dependents. 77 P.S. § 561(7).

If, however, a claimant receiving TTD dies of non-work-related causes, fatal claim benefits are not available, but any specific loss benefits the claimant would have been entitled to will be paid to surviving dependents pursuant to Section 306(g) of the Act. 77 P.S. § 541. In this context, if there are no surviving dependents, the only benefit an estate may receive is funeral expenses. 77 P.S. § 541(7).

10

The availability of benefits to surviving dependents based on whether the claimant dies from his or her work-related injury (fatal claim benefits) or not (specific loss benefits) is generally binary and mutually exclusive. However, the Act also contains Section 410, which states in relevant part: "In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751. Notably, Section 410 does not condition a surviving dependent or estate's eligibility for benefits based on the cause of death in circumstances where a claimant dies before his or her claim is adjudicated.

In *Endres v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 677 A.2d 901 (Pa. Cmwlth. 1996), the worker was severely injured in June 1984. His right lower leg was amputated in July 1984, and he died later that month from his work injuries. *Id*. at 902. After his death, his widow filed petitions for both fatal claim benefits and the specific loss benefits the worker would have been entitled to for the loss of his right lower leg. *Id*. The WCJ awarded fatal claim benefits but denied specific loss benefits on the basis that the worker's death was due to his work injuries; the Board affirmed. *Id*.

This Court affirmed in *Endres*, first explaining that Section 306(d) is not a basis for a surviving dependent to claim both fatal claim benefits under Section 307 and posthumous specific loss benefits under Section 306(g) because 306(d) does not deal specifically with a claimant's death, but simply provides that "the payment of specific loss benefits is to commence at the end of the temporary total disability," which may or may not be due to death. 677 A.2d at 903. This Court also addressed Section 410 as follows:

Section 410 of the Act is a general provision which states that benefits due to a claimant who dies before final adjudication of his or her claim are payable to the claimant's estate or dependents. *This statutory provision does not provide an independent or supporting basis for a specific loss award* as [the worker's widow] maintains.

Section 306(g) relates directly to the receipt of specific loss benefits and is, therefore, a more particular provision.[5] Enacted by the 1972 amendments to the Act, Section 306(g) specifically addresses the receipt of specific loss benefits by an injured employee's dependents if the injured employee dies from causes unrelated to the work injury. Further, this Court held in *Burns International Security Services, Inc. v. Workmen's Compensation Appeal Board (Crist)*, 79 Pa. Cmwlth. 340, 469 A.2d 336 (1984), that specific loss benefits are payable to survivors pursuant to Section 306(g) of the Act where the decedent's death is from a cause other than the work injury. Accordingly, Section 306(g) of the Act supports the WCJ's determination that [the worker's] death from causes related to the work injury does not entitle [the worker's widow] to simultaneously collect fatal claim benefits and specific loss payments.

*Id*. at 903 (emphasis added).

In *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 845 A.2d 239 (Pa. Cmwlth. 2004), the worker sustained serious work-related injuries in September 1999, which led to amputation of her right leg in mid-November 1999. *Id*. at 240-41. She died in late November 1999 from her work injuries with no surviving dependents, after which the employer paid her estate TTD through the date of her death and funeral expenses. *Id*. at 241. Her estate filed a

---

[5] In a footnote, this Court cited the statutory construction principle that when there is a conflict between general and specific provisions of a statute, the specific provisions "shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 677 A.2d at 903 n.2.

petition in January 2002 seeking the specific loss benefits that the worker would have received for the loss of her leg; the WCJ denied the petition and the Board affirmed. *Id.*

The estate argued that although the worker died from her work injuries and had no surviving dependents, it could receive the specific loss benefits she would have been eligible for based on Section 410. 845 A.2d at 243. This Court disagreed, quoting the statement in *Endres* that Section 410 "*does not provide an independent or supporting basis for a specific loss award*[.]" *Id.* (emphasis in original). Section 410 did not apply in *Estate of Harris* because there was no claim pending at the time of the worker's death and no independent legal entitlement to the outcome the estate sought: the worker's death was due to her work injuries, but fatal claim benefits were not available because there were no surviving dependents. *Id.* at 244-45. Even if the worker had died of non-work-related causes, there were still no surviving dependents with statutory eligibility to receive the worker's specific loss benefits. *Id.* The most the estate could receive under either scenario was the statutory funeral expense amount, which the employer had already paid. *Id.* Affirming, *Estate of Harris* concluded:

> The [e]state would have this Court create a new category of claim, i.e., payment of specific loss benefits to an estate, not a dependent, where death is caused by the work-related injury and not by another cause. This claim has no grounding in the language of the Act and is at odds with case law precedent. The General Assembly has spoken, and we are so bound.

*Id.* at 245.

In *Steets*, the worker sustained serious work injuries in June 2017. 295 A.3d at 315. The employer accepted liability and began paying TTD but contested whether the worker sustained specific loss injuries separate and apart from her

disabling injuries. *Id*. In October 2019, the WCJ concluded that the worker sustained disabling injuries separate and apart from the permanent losses of both arms and would be eligible for specific loss benefits at the conclusion of her TTD benefits. *Id*. The Board affirmed in October 2020 and the employer timely appealed to this Court in early November 2020. *Id*. In May 2021, this Court affirmed and the worker's eligibility for specific loss benefits at the conclusion of her TTD benefits became final when the matter was not further appealed to our Supreme Court. *Id*. at 316.

In the interim, in late November 2020, the worker died from her work injuries. 295 A.3d at 315. This occurred shortly after the employer's appeal of the merits of the worker's specific loss claims had been filed in this Court, meaning that the WCJ's adjudication was not yet final. *Id*. The worker had no surviving dependents, so in March 2021, her estate filed petitions for funeral expenses and payment of the specific loss benefits the worker had been awarded but not yet received. *Id*. at 316. The WCJ awarded funeral expenses but denied specific loss benefits to the estate; the Board affirmed, and the estate appealed to this Court. *Id*.

In *Steets*, we first quoted Section 306(g)(7), which states: "If there be no dependents eligible to receive payments under this section then the payments shall be made to the estate of the deceased but in an amount not exceeding reasonable funeral expenses as provided in this act[.]" 295 A.3d at 320-21 (quoting 77 P.S. § 541(7)). Because the worker died from her work-related injuries and left no surviving dependents, we held that the employer's only financial obligation to the estate under the Act was funeral expenses, which it paid. *Id*. at 320.

The estate argued in *Steets* that as a matter of equity and policy, this Court should "clarify" our holding in *Estate of Harris* to allow estates to receive

14

specific loss benefits that would have been awarded to claimants who die due to their work injuries. 295 A.3d at 321. This Court disagreed, concluding that *Estate of Harris* was correctly decided and on-point. *Id*. at 321-23. We pointed out that in both cases, the workers died from their work injuries and left no surviving dependents; accordingly, the employers' only statutory obligation to the estates was to pay funeral expenses. *Id*. at 321-23. We explained that allowing fatal claim benefits and heritable specific loss benefits but limiting them to surviving dependents comported with the Act's plain language and did not offend its humanitarian purposes. *Id*. at 322 (quoting Yen T. Lucas, *Est. of Harris v. Workers' Comp. Appeal Bd. (Sunoco, Inc. & Esis/Signa)*: Survival of Specific Loss Claims, 15 Widener L.J. 519, 528-30 (2006)). We agreed with the Lucas article that this was likely a policy decision on the part of the legislature to ensure protection of "those most vulnerable to the harm occasioned by work-related injuries," such as dependent widows, widowers, and minor children and that only the legislature could change the Act to treat surviving dependents and estates equally in this context. *Id*. Accordingly, in *Steets*, because the worker left no surviving dependents, the plain language and operation of the Act limited the estate's recovery to funeral expenses; therefore, we affirmed the administrative tribunals. *Id*. at 323.

In dissent in *Steets*, Judge Ceisler, joined by President Judge Cohn Jubelirer, asserted that Section 410 authorized payment of the worker's specific loss benefits to the estate. 295 A.3d at 323-25 (Ceisler, J., dissenting). The dissent noted that Section 410 does not condition its application on the cause of a claimant's death and that this Court interpreted it liberally in *White v. Workers' Compensation Appeal Board (Good Shepherd Rehabilitation Hospital)*, 666 A.2d 1128, 1130 (Pa. Cmwlth. 1995), to allow heritability of the TTD benefits that the worker would have received

15

from her petition to reinstate her benefits, which was pending when she died from non-work-related causes and granted shortly thereafter. *Id*. at 323-34 (quoting this Court's agreement with the claimant in *White* that "Section 410's scheme of distribution applies to all claims regardless of the nature of the loss[,]" 666 A.2d at 1130). The dissent in *Steets* distinguished *Estate of Harris* on the basis that the claimant there had not petitioned for or been awarded specific loss benefits prior to her death while the specific benefits claim in *Steets* was still in active litigation when the worker died. *Id*. at 325.

Relevant to this appeal, the dissent in *Steets* did not distinguish between the would-be recipients after a claimant's death; neither does Section 410, which states that compensation due to a claimant to the date of death "shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751. However, in *Endres*, this Court described Section 410 as a "general provision" and stated that where it conflicted with Sections 306(g) and 307, the more specific provisions pertaining to specific loss and fatal claim benefits, the more specific provisions would prevail. 677 A.2d at 903 & n.2; *see also Steets*, 295 A.3d at 318 (quoting *Endres*); *Estate of Harris*, 845 A.2d at 243 (same). As noted, Section 306(g) (heritable specific loss benefits) and Section 307 (fatal claim benefits) provide detailed schedules of who is eligible to receive what benefits after a claimant's death. In both, individual recipients must be surviving dependents, such as a widow or widower, children, or parents or siblings who can establish dependence on the claimant prior to death. *See* 77 P.S. § 561(1)-(6); 77 P.S. § 541(1)-(6). However, both sections also specifically state that if no eligible surviving dependents exist, then payment will be due to the decedent's estate, but only for burial expenses up to $7,000. *See* 77 P.S. § 561(7); 77 P.S. § 541(7). The

16

majority in *Steets* explained that to award the worker's specific loss benefits to the estate would directly conflict with those provisions of the Act and *Estate of Harris*. *See* 295 A.3d at 319 n.10, 321 & n.12. For that reason, the dissent's position did not prevail in *Steets*.

We reaffirm the holdings of *Endres* and its progeny that the specific provisions of Sections 306(g) and 307 will usually prevail over the more general Section 410. *See Steets*, 295 A.3d at 319 (quoting Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933). However, this case is factually distinguishable from those cases in notable ways that combine to make Section 410 applicable here. In *Endres*, the issue was whether the worker's widow could receive both fatal claim benefits in her own right and the worker's specific loss benefits that were available because he sustained separate and apart disabling injuries. This Court held that to award the worker's specific loss benefits to the widow in accordance with Section 410 would conflict with the plain language of Section 306(g), which expressly limited the heritability of specific loss benefits to instances where the claimant dies from non-work-related causes. 677 A.2 at 902-03. Section 306(g), as a specific provision, prevailed over Section 410, so the widow could not collect the worker's specific loss benefits, which are limited to deaths from non-work-related causes. *Id*. Also, because the widow in *Endres* had already been awarded fatal claim benefits in her own right, the resolution in that case prevented double recovery, a tenet of the Act that stands alongside its humanitarian goals. *Id*.

Here, double recovery is not at issue. Because Claimant's death from his work injuries occurred more than 300 weeks after his initial injuries occurred, his widow is presumably not eligible for fatal claim benefits. *See* 77 P.S. § 411(1). Also, unlike in *Endres*, where there was no pending litigation when the worker died,

17

Claimant petitioned to convert his TTD to specific loss benefits during his lifetime and died while that petition was still in litigation before the WCJ on the Board's remand. This case fits Section 410, which applies when a claimant dies "before the final adjudication of his claim." 77 P.S. § 751.

This case is also distinguishable from *Estate of Harris*. There, unlike here, the worker had not petitioned for specific loss benefits prior to her death from her work injuries, so no litigation was pending to trigger Section 410. Moreover, the worker in *Estate of Harris* left no surviving dependents, and even if her specific loss benefits were deemed heritable, her estate could only receive funeral expenses pursuant to the clear language of Section 306(g)(7). Here, Claimant's widow is an eligible surviving dependent eligible to receive payment of heritable benefits.

In *Steets*, the worker's eligibility for specific loss benefits was in active litigation at the time of her death from her work injuries, so Section 410 was applicable. However, as in *Estate of Harris*, there were no surviving dependents in *Steets*, so even if the worker's specific loss benefits were deemed heritable, payment of those benefits to the worker's estate would conflict with Section 306(g)(7), which limits an estate's recovery to funeral expenses. Here, again, Claimant's widow is a surviving dependent eligible to receive heritable benefits.

Although Claimant's widow would otherwise be eligible for fatal claim benefits based on Claimant's death from his work injuries, she is, as noted, presumably barred from receiving them because Claimant's death occurred more than 300 weeks after the incident that caused his injuries. Accordingly, the straightforward operation of Sections 306(g), 307, and 301(c)(1) would leave Claimant's widow, a surviving dependent, with no remedy at all. Our Supreme Court has stated that it is "inconceivable that the legislature, in enacting a statute

18

specifically designed to benefit employees, intended to leave a certain class of employees who have suffered the most serious of work-related injuries without any redress under the Act or at common law." *Tooey*, 81 A.3d at 864. We also recall our holding in *White* that "Section 410's scheme of distribution applies to all claims regardless of the nature of the loss." 666 A.2d at 1130.

Section 410 states in relevant part: "In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751. As noted, Section 410 does not qualify a surviving dependent's receipt of benefits on the cause of the claimant's death. Instead, the provision occupies a narrow area in the operation of the Act where the crucial point is not the claimant's death, but the filing of the claim or petition while the claimant is still alive. If Section 410's requirement of litigation instituted prior to the claimant's death is met, its application will not conflict with either Section 306(g) or Section 307, both of which are triggered at the time of death and applied depending on the cause of death. Accordingly, to analyze a Section 410 claim, our workers' compensation tribunals and courts must put aside the claimant's ultimate death and the cause thereof and focus on the preceding time period between the filing of the petition and the claimant's death.

Given the foregoing, the test for a Section 410 claim tracks the provision's language as follows. First, the claimant must have a pending petition or claim that is not yet finally adjudicated at the time of the claimant's death. Next, the claim as posed at the time of filing must be meritorious and prevail. If both elements are met, the amount of compensation the claimant would have been due "to the date

19

of death" (and regardless of the cause of death) "shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent."

As discussed above, Claimant did not present a Section 410 claim to the Board. However, as we have concluded, Section 410 is mandatory and not waivable. Because Claimant's widow raised Section 410 to this Court, both sides have had the opportunity to brief and argue its application, and there is no factual dispute. Accordingly, we will analyze Section 410 with regard to this matter, focusing primarily on the period between Claimant's petition to convert his benefits and his death.

Claimant first filed a petition with the WCJ in June 2020 to convert his benefits from TTD to specific loss benefits. C.R. at 70. Given our pronouncement in *White* that Section 410 "applies to all claims regardless of the nature of the loss," Claimant's petition to convert his TTD to specific loss benefits clearly constituted a "claim." The WCJ concluded that the Board had original jurisdiction over this matter based on Section 306(c)(23) of the Act, so Claimant filed his petition with the Board in November 2020. *Id.* In August 2021, the Board remanded the matter to the WCJ for factfinding. *Id.* at 71. Days later, the WCJ held the first hearing on Claimant's petition and proceeded to take evidence through a final hearing in April 2022. *See* C.R. at 113-59. During that time period, in November 2021, Claimant died from his work injuries. At the time of Claimant's death, the litigation on his claim seeking to convert his benefits was ongoing and had not yet been finally adjudicated. Accordingly, the first element of the test is met, and Section 410 applies here.

20

When the WCJ issued his findings of fact in July 2022, he concluded that Claimant had established specific loss of all four limbs and disabling mental and emotional injuries separate and apart from his specific losses, meaning that Employer could not credit the TTD benefits it had already paid Claimant against the specific loss benefits he would be eligible to receive at the end of his TTD benefits. C.R. at 73. The WCJ also credited Claimant's widow's testimony that the conversion would be in the best financial interests of Claimant's family. *Id.* The Board adopted the WCJ's findings of fact and opined that if Claimant had not died while the matter was pending before the WCJ, it "*likely* would have found it more financially advantageous for Claimant and, by extension, his family, to convert" from TTD to specific loss benefits. *Id.* at 77 (emphasis added). In light of the Board's focus on Claimant's ultimate death from his work injuries, which led the Board to deem Claimant's petition moot, this was not a final adjudication on the merits. However, given the applicability of Section 410, the Board's order will be vacated, and this matter will be remanded to the Board, which acts in its original jurisdiction in this context. The Board shall issue a final determination and opinion on the merits of Claimant's petition to convert his TTD to specific loss benefits, which both sides will have an opportunity to appeal to this Court so a final adjudication may be reached.

When the matter is finally adjudicated, and if it is concluded that Claimant's petition to convert his benefits would have succeeded, that conclusion would relate back to November 20, 2020, the date he filed his petition with the Board while he was still alive and after his first petition was dismissed by the WCJ for lack of jurisdiction. At that point, Claimant would have established eligibility prior to his death for specific loss benefits based on the permanent loss of all four of his

21

limbs, which would be 410 weeks per limb (1640 total) and perhaps also for additional "healing period" benefits of 25 weeks, both pursuant to Section 306(c) of the Act. *See* 77 P.S. § 513.[6] In those circumstances, the second element of the Section 410 test would be met. Employer would then be obligated to pay Claimant's widow the full amount, representing "the amount of compensation due" to Claimant "to the date of death." As discussed above, the ultimate cause of Claimant's death is not at issue in this Section 410 inquiry.

We emphasize that Section 410 will apply only in very narrow circumstances where a claimant has a claim for compensation pending at the time of death that ultimately prevails. If Section 410's elements are met, "the amount of compensation due" relates back to the time of the filing of the claim or petition and does not take the ultimate cause of death into consideration. Usually, Sections 306(g) and 307 are applied when a claimant dies in the absence of pending claim litigation, which commonly occurs. When Section 410 applies because claim litigation is pending when the claimant dies, Sections 306(g) and Section 307 still apply and work with Section 410 to ensure the heritability of some form of benefits that the claimant sought but had not yet received prior to death. To that end, there must be an eligible surviving dependent to receive the benefits because to award them to an estate would conflict with Sections 306(g)(7) and 307(7), as illustrated in *Steets*. 295 A.3d at 320 (stating that because the claimant "had no dependents with rights to either her total disability or specific loss benefits when she died . . . [the

---

[6] When a claimant sustains multiple specific losses from a single incident, the healing periods run simultaneously, and the claimant may only be compensated for the longest single healing period rather than the aggregate. *Tloczynski v. Workers' Comp. Appeal Bd. (John F. Miles Co.)*, 765 A.2d 1183, 1180 (Pa. Cmwlth. 2001). The loss of a leg results in a 25-week healing period, which is the longest applicable period, so if Claimant is ultimately found eligible for a healing period in this matter, it would likely be for an additional 25 weeks of benefits in addition to the 1640 weeks of specific losses.

e]mployer's only statutory obligation was to pay $7,000 in funeral expenses"). Finally, this application of Section 410 comports with the Act's policy goals of ensuring that surviving dependents, like Claimant's widow, are not left without a fair remedy when the worker they depend on dies, whether from work injuries or otherwise. *See Tooey*, 81 A.3d at 864; *Steets*, 295 A.3d at 322 (quoting the Lucas article).

## IV. Conclusion

In light of the foregoing determination that Section 410 applies in this matter, the Board's order denying Claimant's petition to convert his benefits from TTD to specific loss as moot because he died from his work injuries is vacated. This matter is remanded to the Board for a final determination and opinion on the merits of Claimant's petition, which either side may appeal to this Court.

_____
CHRISTINE FIZZANO CANNON, Judge


President Judge Cohn Jubelirer and Judge Covey concur in the result only.

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elmer Riehl,                           :
                    Petitioner         :
                                       :
        v.                             :
                                       :
Beiler Brothers, LLC (Workers'         :
Compensation Appeal Board),            :     No. 1563 C.D. 2023
                    Respondent         :

# **O R D E R**

AND NOW, this 18th day of November, 2024, the December 1, 2023, order of the Workers' Compensation Appeal Board (Board) is VACATED. This matter is remanded to the Board for a final determination and opinion on the merits of Elmer Riehl's November 20, 2020, petition to convert his temporary total disability benefits to specific loss benefits, which may thereafter be timely appealed to this Court.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge